UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>JAMES TAMBONE and ROBERT HUSSEY,<br><br>    Defendants. | Civil Action No.:  06-10885 NMG |

**DEFENDANT JAMES TAMBONE'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

### I.  INTRODUCTION

On January 27, 2006, this Court dismissed the claims of the United States Securities and Exchange Commission (the "SEC" or "Commission") against Mr. James Tambone ("Mr. Tambone") because its complaint failed to allege that Mr. Tambone made any material misrepresentations, or aided and abetted Columbia Advisor's material misrepresentations.[1] S.E.C. v. Tambone, 417 F. Supp. 2d 127 (D. Mass. 2006).  What was missing from the SEC's case, according to this Court, was any factual misrepresentations that were attributable to Mr. Tambone.

---

[1]  The Commission alleges that Mr. Tambone made misrepresentations in connection with various mutual funds within the Columbia mutual fund complex ("the Columbia Funds").  Mr. Tambone was a Co-President of Columbia Funds Distributor, Inc. ("Columbia Distributor"), a Massachusetts corporation and a broker-dealer registered with the SEC.  Columbia Management Advisors, Inc. ("Columbia Advisors"), an Oregon Corporation, is the registered investment adviser to the Columbia Funds.  Columbia Funds Services, Inc. ("Columbia Services") is the transfer agent for the Columbia Funds.

On May 19, 2006, after a failed attempt to amend their prior pleading, the Commission came back with a new complaint (the "New Complaint") in a new case, which it hopes will pass muster with this Court. It assuredly does not.

In the New Complaint, the Commission adds two allegations: (1) Mr. Tambone was "from time to time . . . involved in the process of revising prospectuses for the funds," and (2) Mr. Tambone signed fraudulent contracts (the alleged "Selling Agreements"[2]) promising that the Columbia Funds' prospectuses would be free of material misstatement. The basis for these supposed "new" claims all arise more than five years prior to the filing of this New Complaint. As a result, they are barred by the statute of limitations, which is five years.

Even if the Commission's case were not barred by the statute of limitations (which it is), the new allegations do not cure the deficiencies of the SEC's prior pleading. First, the Commission's conclusory statement that Mr. Tambone was "involved" with unspecified revisions to unidentified prospectuses is made by the Commission on "information and belief." By that statement alone, the Commission admits it has no factual evidence in its voluminous evidentiary record linking Mr. Tambone to any untrue statement contained in any prospectuses. Even upon "information and belief," the most the Commission can offer by way of purported attribution is that Mr. Tambone "commented" on the prospectus language to Columbia's legal department. "Commenting" on the work of others is a far cry from authorship of any sort -- which is what this Court requires the SEC to plead in order to maintain its causes of action against Mr. Tambone here. In addition, this allegation contradicts the SEC's own earlier pleading, which, as noted by this Court, stated that Columbia Advisors was "responsible for all

---

[2] "Selling Agreements" are alleged to be standard contracts entered into between Columbia Distributors and broker-dealers who purchase the mutual fund shares directly for their own accounts to be then re-sold to individual shareholders.

2

representations in the prospectuses." Tambone, 417 F. Supp. at 135. The Commission cannot have it both ways.

Second, as to the purported Selling Agreements signed by Mr. Tambone, the Commission cannot take what is, at best, a vaguely plead breach of contract claim and turn it into a specifically plead claim for securities fraud. Those Selling Agreements, as quoted in the New Complaint by the SEC, contain a forward looking statement of intent: i.e., that any prospectuses provided to the party to the agreement *will be* without misstatement. These warranties -- providing specific remedies to the contracting party if breached -- are not statements of material fact. The Commission should not be allowed to pretend otherwise. Moreover, the SEC has not specified when Mr. Tambone signed the Selling Agreements, with whom the Selling Agreements were with, which fund they concerned, or even which prospectuses were distributed pursuant to these Selling Agreements. Thus, the new allegations are not only irrelevant as a matter of law, but they are insufficiently plead under Rule 9(b).

Further, the Commission attempts to resurrect its previous claims that Mr. Tambone should be found liable as a primary violator of the securities laws because he is alleged to have a special duty to the shareholders of the Columbia Funds. This has already been examined and rejected by this Court, which found that "[b]ecause the defendants in the case at bar were not responsible for the misleading disclosures in the funds' prospectuses, they were under no duty to correct those statements if they were misleading." Id. at 134. The Commission also ignores the Court's previous ruling by arguing in its New Complaint that there was a scheme to defraud in this matter, and that Mr. Tambone was a participant. This Court explicitly told the SEC that "market timing arrangements are not the kind of sham transactions which have been held to

qualify as schemes to defraud." Id. at 136.  No amount of argument or hyperbole in the Commission's New Complaint can alter that simple truth.

In sum, the Commission's bald statements (which need not be credited) and argumentative pleading style cannot change or make up for the fact that the purported fraudulent statements in the Columbia Funds' prospectuses are not attributable to Mr. Tambone and, without such attribution, the SEC has no viable claims.  That lack of attribution is insurmountable here.  Accordingly, this Court should dismiss the SEC's claims against Mr. Tambone with prejudice.  The Commission has been given chance after chance after chance to "get it right" here.  Each time, including now, it has failed.  It has failed not because of poor draftsmanship, it has failed because it lacks a viable case against Mr. Tambone.

## II.     PROCEDURAL BACKGROUND

### A.     The First Complaint And This Court's Dismissal Order

The Commission brought its first iteration of this action on February 29, 2005 (C.A. No. 05-10247-NMG) (the "First Complaint").  This Court (Gorton, J.) dismissed the First Complaint on January 27, 2006 because the SEC failed to plead securities fraud with particularity under FED. R. CIV. P. 9(b).  Tambone, 417 F. Supp. at 133.  In dismissing all counts alleging that Mr. Tambone was primarily liable for securities fraud, this Court held that:

- The Commission failed to allege that Mr. Tambone personally made any untrue or misleading statement of material fact.  Id. at 134;

- The SEC's baseless assertion that the dissemination and communication of misleading statements attributable to others can be the basis of primary liability was contrary to case law.  Id.;

- The SEC's assertion that its allegation that Mr. Tambone "used" the prospectuses "in offering and selling the funds directly or indirectly to clients and potential clients" was insufficiently particular under Rule 9(b).  Id. at 133;

- Mr. Tambone was not under a duty to correct any alleged misstatements in the Columbia Funds' prospectuses because he was not responsible for any misleading

4

        disclosures, notwithstanding the vague allegation that Mr. Tambone "used" those prospectuses in his sales efforts.  Id. at 135; and

- Any alleged market timing arrangements were not, in and of themselves, schemes to defraud.  Id. at 135-36.

In dismissing all counts alleging that Mr. Tambone <u>aided and abetted</u> others' fraudulent conduct, this Court held that:

- The Commission failed to plead with the requisite particularity that Mr. Tambone had "actual knowledge" of the improper actions of the primary violators and their roles in that activity.  Id. at 137;

- The Commission failed to adequately plead that Mr. Tambone had the "conscious intent" required to show that he provided knowing and substantial assistance.  Id.; and

- The Commission made no allegation that Mr. Tambone "consciously threw in [his] lot with the primary violators."  Id.

### B.     **The Commission's New Complaint**

Despite the Court's dismissal of the First Complaint, the Commission filed its New Complaint against Mr. Tambone on May 19, 2006.  The vast majority of that New Complaint is word-for-word the same as the First Complaint.  In addition, a greater amount of argument and hyperbole has been added to the previous allegations.  Finally, the Commission added the following four new substantive allegations:

¶¶ 10, 36, 37   On information and belief, Mr. Tambone is alleged to have reviewed and provided input into the market timing language that was incorporated into certain unidentified prospectuses.  All of this is alleged to have occurred in May 2000.

¶ 11.   By virtue of its status as an underwriter, "Columbia Distributor is alleged to have a duty to make a reasonable and diligent investigation of the statements contained in the prospectuses for the Columbia Funds, and to ensure that such statements were true and that there were no omissions of material fact that needed to be stated in order to make the statements contained therein not misleading."  Mr. Tambone is also alleged therein to have a "similar special duty" to "investigate and analyze the prospectuses to ensure that the key representations in the literature provided to the investors were truthful and accurate."

5

| | |
|---|---|
| ¶¶ 40-43 | Mr. Tambone is also alleged to have signed hundreds of "Selling Agreements" that warranted that "each Prospectus and all sales literature we issue will not by statement or omission be misleading." No dates of execution or parties to these agreements are provided in the New Complaint, however. |
| ¶¶ 100-101 | The SEC alleges, without specificity, that the facts regarding the purported fraud were concealed until September 2003, when Columbia Advisors was asked about timing activity by the Commission Staff. The SEC further claims that it had no knowledge or reason to know prior to 2003 that timing activities were occurring in Columbia Funds accounts. |

### III.   ARGUMENT

**A.   The SEC's Claims Against Mr. Tambone Are Barred By The <u>Statute of Limitations.</u>**

The SEC pleads that the alleged fraud in this case took place "[f]rom as early as 1998 and continuing through September 2003." New Complaint ¶ 1. But nearly all of the material events alleged in the New Complaint took place prior to May 19, 2001. For example, all of the alleged "comments" by Mr. Tambone on revisions to the prospectuses, even if credited, took place in May 2000. New Complaint ¶¶ 10, 36, 37. Similarly, many of the market timing episodes alleged by the Commission occurred more than five years before the New Complaint was filed. New Complaint ¶¶ 77-83. Accordingly, the SEC's claims here are barred by the applicable statute of limitations, 28 U.S.C. § 2462, which provides:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

It is well settled that civil actions brought by the SEC seeking civil penalties are subject to this five year statute of limitations. <u>See</u> <u>Johnson v. SEC</u>, 87 F.3d 484, 488 n.5 (D.C. Cir. 1996) (granting petition to vacate SEC censure and suspension and holding that "§ 2462 applies

6

equally to pecuniary and nonpecuniary penalties"). Because the New Complaint seeks civil penalties as well as equitable relief against Mr. Tambone, it falls within the scope of Section 2462 -- and therefore should be dismissed in total as barred by the statute of limitations. See U.S. v. Windware Properties, Inc., 821 F. Supp. 690, 693 (N.D. Ga. 1993) (holding that "it is apparent that legal and equitable remedies are available concurrently, as the Government has requested both civil penalties and injunctive relief. Accordingly, the limitations period provided by § 2462 applies to Plaintiff's request for both legal and equitable relief."); see also Cope v. Anderson, 331 U.S. 461, 464 (1947) (holding that "equity will withhold its relief . . . where the applicable statute of limitations would bar the concurrent legal remedy").[3]

### B. The Allegations Of The New Complaint Do Not Cure The SEC's Failure To Attribute Any Misleading Statements In The Columbia Funds' Prospectuses To Mr. Tambone.

All along, this Court has been very clear that to survive a motion to dismiss, the Commission's complaint must specify: 1) *what* fraudulent statements in the Columbia Funds' prospectuses were fraudulent; 2) *where* (i.e., in which Columbia Funds' prospectuses) those alleged misrepresentations were made; 3) *when* Mr. Tambone purportedly made those statements; and 4) *how* the statements were fraudulent. See Tambone, 417 F. Supp. 2d at 130.

---

[3] Moreover, any attempt by the SEC to excuse itself from the operation of the statute of limitations by pleading fraudulent concealment will be unavailing. First, § 2462 is not subject to tolling owing to fraudulent concealment. See SEC v. Scrushy, No. 03-J-615S, 2005 WL 3279894, *3 (N.D. Ala. Nov. 29, 2005) (granting motion to dismiss untimely claims, rejecting SEC's claim that § 2462 is tolled by fraudulent concealment, and holding that "the appropriate start of the statute of limitations is the date of the violations for which the civil penalties are sought, not the discovery of such violations."); but see S.E.C. v. Jones, No. 05-7044, 2006 WL 1084276, *6 (S.D.N.Y. April 25, 2006). Second, as discussed above, the SEC has failed to state the circumstances of any alleged fraudulent activity by Mr. Tambone with the requisite specificity, rendering this argument unavailing to the Commission. Oechsner v. Connell Ltd. P'ship, 283 F. Supp. 2d 926, 933 (S.D.N.Y. 2003) (granting motion to dismiss where plaintiff failed to support fraudulent concealment exception to statue of limitation with requisite particularity under Rule 9(b)). Indeed, the SEC has failed to plead any affirmative act by Mr. Tambone that would have concealed the alleged fraud, which it must in order to avoid operation of the statute of limitations. See Berkson v. Del Monte Corp., 743 F.2d 53, 56 (1st Cir. 1984) (holding that "[I]t is well established that the plaintiff must allege facts showing affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief. Silence or passive conduct of the defendant is not deemed fraudulent, unless the relationship of the parties imposes a duty upon the defendant to make disclosure.").

Indeed, this Court dismissed the SEC's First Complaint because it was vague and conclusory, and it did not attribute any false or misleading statements in the Columbia Funds' prospectuses to Mr. Tambone.  Id. at 133.

Yet, inexplicably, the Commission's New Complaint fails to attribute any false and misleading statements to Mr. Tambone.  Despite the Commission's aggressive pleading of the New Complaint, the best it can do is allege "*on information and belief*" that "Tambone reviewed and provided input into the market timing language that was incorporated into certain of the prospectuses."  See, e.g., New Complaint ¶ 10.  Such loose pleading not only fails to satisfy the requirements of Fed. R. Civ. P. 9(b), it also does not provide the needed attribution to Mr. Tambone.[4]  Therefore, this Court should dismiss the New Complaint with prejudice.[5]

> **1.    The SEC's pleading "on information and belief" that Mr. Tambone "made comments" on Columbia's revisions to the funds' prospectuses in 2000 does not satisfy this Court's attribution requirement.**

After a full investigatory period, the Commission finds itself attempting to plead the purported fraud of Mr. Tambone "on information and belief."  Not only is this a telling admission that specific facts attributing misleading statements in the Columbia Funds'

---

[4]  Rule 9(b) of the Fed. R. Civ. P. requires that the "time, place and content" of purported mistatements be pled with specificity -- all of which is missing from the Commission's conclusory statement in ¶ 10 of the New Complaint.

[5]  Despite having well over two years to uncover facts to support meritorious claims against Mr. Tambone, the Commission has failed to do so.  During that time, the Commission subpoenaed tens of thousands of pages of documents and interviewed and deposed dozens of witnesses.  Despite that, the Commission carelessly litigated this case from the beginning and offers no excuses for its conduct.  At the same time, Mr. Tambone has lived under a cloud of impropriety and suffered severe career consequences.  Allowing the Commission additional time to find meritorious claims against Mr. Tambone would unfairly prejudice Mr. Tambone, and, would be futile.  Accordingly, the New Complaint should be dismissed with prejudice.  See Sicom Systems, Ltd. v. Agilent Tech., 427 F.3d 971, 980 (Fed. Cir. 2005) (affirming dismissal with prejudice and holding that "the district court did not abuse its discretion by dismissing this case with prejudice . . . this action was [plaintiff's] second suit that was dismissed . . . Although [plaintiff] is correct that dismissal with prejudice is generally inappropriate where the [pleading] defect can be cured, [plaintiff] already had a chance to cure the defect and failed."); see also Associacion de Empleados del Instituto de Cultura Puertorriquena v. Rodriguez Morales, 538 F.2d 915, 917 (1st Cir. 1976) (affirming dismissal with prejudice and holding that a "court undoubtedly has the power to dismiss with prejudice under Rule 41(b).").

prospectuses to Mr. Tambone do not exist, it is a fatal pleading deficiency because the SEC has not specified the source of that information and belief. See Garvey v. Arkoosh, 354 F. Supp. 2d 73, 80 (D. Mass. 2005) (requiring a party to "set forth the source of the information and the reasons for the belief" to satisfy 9(b)); see also Romani v. Shearson Lehman Hutton, 929 F.2d 875, 878 (1st Cir. 1991) (affirming dismissal and holding that "[w]here allegations of fraud are explicitly or, as in this case, implicitly, based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief."); see also Greebel *v.* FTP Software, Inc., 929 F.2d 875, 194 (1st Cir. 1999) (affirming dismissal and holding that "this court has required plaintiffs who bring their claims on information and belief to set forth the source of the information and the reasons for the belief . . . Our previous strict pleading requirements under Rule 9(b) are, in our view, consistent with the PSLRA.") (internal citations omitted).

In addition, the SEC's allegations as to purported "comments" or "revisions" made by Mr. Tambone fail to specify: 1) *what* fraudulent statements in the Columbia Funds' prospectuses are attributable to Mr. Tambone based on those purported comments or revisions; 2) *where* (i.e., in which Columbia Funds' prospectuses) those alleged misrepresentations were made; 3) *when* Mr. Tambone purportedly made those statements (again, in which Columbia Funds prospectuses); and 4) *how* the purported statements attributable to Mr. Tambone were fraudulent. To be successful here, the Commission needed to plead these facts. See Tambone, 417 F. Supp. 2d at 130. It has not, however, done so -- despite the clear guidance of the Court.[6]   Simple

---

[6] In anticipation of this challenge, or in recognition of the weakness of its pleading, the Commission argues, in the New Complaint itself, that this Court should excuse the Commission's failure to attribute specific statements to Mr. Tambone because certain communications between Mr. Tambone and Columbia's in-house legal staff are currently protected by attorney-client privilege. The existence of attorney-client privileged information should not excuse the SEC of its pleading burden here. C.f., Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985) ("Even where allegations are based on information and belief, supporting facts on which the belief is founded must be set forth in

allegations that Mr. Tambone may have "commented" on the language of the Columbia Funds' prospectuses from time to time do not make him the author of any and all statements contained within. Indeed, as this Court has previously held, the SEC (in its prior Opposition) "implicitly concedes that the defendants played no role in preparing, drafting or signing the allegedly misleading prospectuses." Tambone, 417 F. Supp. 2d at 133.

> **2.    The New Complaint's allegation that Mr. Tambone "used" or "disseminated" the Columbia Funds' prospectuses cannot provide the needed attribution.**

In the New Complaint, the SEC continues to allege that the statements of the Columbia Funds' prospectuses should be attributed to Mr. Tambone because he "used the prospectuses in sales efforts by allowing their dissemination and by referring clients and potential clients to them for information about the funds." New Complaint ¶ 9. The deficiency of that pleading style was already addressed by this Court -- which found that "the SEC's claims of primary liability through dissemination do not withstand the weight of contravening case law." Tambone, 417 F. Supp. 2d at 134, citing Wright v. Ernst & Young, 152 F.3d 169, 175 (2d Cir. 1998) (stating that "a secondary actor cannot incur primary liability under the Act for a statement not attributed to that actor at the time of its dissemination"); and Winkler v. NRD Mining, Ltd., 198 F.R.D. 355, 366 (E.D.N.Y. 2000) (refusing to impose Section 10(b) liability on the disseminator of misstatements that were attributable to another). The SEC simply ignored this Court's prior ruling.

---

the complaint. … And this holds true even when the fraud relates to matters peculiarly within the knowledge of the opposing party.") (internal quotation marks and citations omitted).

### 3. The Commission cannot attribute a material omission or deceptive scheme to Mr. Tambone as a matter of law.

As this Court has previously found, Mr. Tambone is not responsible for any representations in the prospectuses, and therefore he was under no duty to clarify any allegedly misleading statements contained therein. Tambone, 417 F. Supp. 2d at 135. See also Wright, 152 F.3d at 175 (a defendant must actually make a false or misleading statement in order to be held primarily liable under Section 10(b)). But, the SEC alleges that Mr. Tambone had a duty to disclose a supposed conflict of interest between long-term or prospective shareholders and short-term or excessive traders. New Complaint ¶ 8. To support that assertion, the SEC now alleges for the first time that, as a securities professional and executive responsible for the sale of funds, Mr. Tambone owed a special duty to fund purchasers and an obligation to be sure prospectuses were accurate. New Complaint ¶ 11. The law says there is no such duty. There may be a duty to disclose facts and information when one is in a fiduciary or similar relationship of trust and confidence. See Backman v. Polaroid Corp., 910 F.2d 10, 16-17 (1st Cir. 1990); Austin v. Bradley, Barry & Tarlow, P.C., 836 F. Supp. 36, 39 (D. Mass. 1993). That is not true here. Mr. Tambone's status as Co-President of Columbia Distributor does not entail that type of relationship with Columbia Funds' investors because no fiduciary or similar relationship of trust arises on the basis of "one's status" as a broker-dealer to independent investors. See Congregation of the Passion, Holy Cross Province v. Kidder Peabody & Co., Inc., 800 F.2d 177, 182 (7th Cir. 1986); see also Moss v. Morgan Stanley Inc., 719 F.2d 5, 15 (2d Cir. 1983); Press v. Chem. Invest. Srvs. Corp., 166 F.3d 529, 536 (2d Cir. 1999) (explaining that "in the context of an ordinary broker-client relationship … the broker owes no fiduciary duty to the purchaser of the security").

Finally, the Commission's allegation that Mr. Tambone participated in a fraudulent scheme with Columbia Distributor, Columbia Advisors, and Columbia Funds to allow market timing, (see, e.g., New Complaint ¶ 1), flies in the face of the earlier ruling of this Court, which states that "market timing arrangements are not the kind of sham transactions which have been held to qualify as schemes to defraud." Tambone, 417 F. Supp. 2d at 135.  Accordingly, any attempt by the SEC to ground liability on Mr. Tambone's participation in such a scheme should be rejected as a matter of law.

### C. Mr. Tambone's Alleged Signing Of Selling Agreements Warranting Future Events Is Not A Violation of the Securities Laws.

In the New Complaint, the SEC has added the allegation that Mr. Tambone "signed hundreds of agreements with fund purchasers in which he expressly represented and warranted that the prospectuses were not misleading" despite knowing, or being reckless in not knowing, that the prospectuses were false.  New Complaint ¶ 3.  Evidentially, the SEC believes that this allegation will, somehow, cause the language of the unspecified Columbia Funds' prospectuses to become attributable to Mr. Tambone.  But, this vague and conclusory allegation does not cure what ills the SEC's case against Mr. Tambone.  First, the allegations concerning the Selling Agreements fail to satisfy the requirements of Fed. R. Civ. P. 9(b) because the allegations fail to identify a single Selling Agreement, or the identity of any party thereto.  Thus, from the New Complaint, it cannot be determined (among other things):

- when the alleged selling agreements were signed;
- what mutual funds they pertained to;
- who the parties to the agreements were;
- what prospectuses the parties to the agreements received and when;
- whether those parties bought or sold mutual funds in which market timing was occurring; and

12

- if there was market timing activity occurring, then what the relevant prospectuses stated at the time about market timing activities.

Moreover, the SEC's claim that Mr. Tambone "represented and warranted" that any prospectuses provided in connection with the selling agreements would not be misleading does not adequately allege an actionable misrepresentation. Indeed, the portion of the Selling Agreements actually quoted by the SEC (as opposed to its mischaracterizations thereof) does not show that Mr. Tambone made any representation of fact. New Complaint ¶ 42. This is nothing more than a claim that Mr. Tambone breached the selling agreements, but an allegation that a defendant breached a contract provision, even one connected to the purchase or sale of a security, does not allege a claim for securities fraud. See Seward v. Hammond, 8 F.R.D. 457, 459 (D. Mass. 1948) (granting motion to dismiss and holding that "a failure to perform the terms of a contract, without more, does not constitute 'fraud' within the meaning of the Securities Exchange Act."). See also Broad v. Rockwell Int'l Corp., 614 F.2d 418, 438-39 (5th Cir. 1980) (affirming dismissal of Section 10(b) claim and holding that "a claim for breach of contract . . . does not mean that plaintiff may bring a 10b-5 action.").[7]

In addition, an allegation that Mr. Tambone made a promise to perform specific acts in the future which he then breached is insufficient to state a claim for securities fraud absent allegations that Mr. Tambone intended not to fulfill that promise when he made it, and that the promise was part of the consideration for the securities transaction. See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1986) (affirming grant of defendant's motion to dismiss and holding that a "person who promises to perform a specific act in the future, while secretly intending not to perform, violates Rule 10b-5, provided that the promise is part of the

---

[7] Further, the fact that the selling agreements provide for a specific remedy in the event of a breach of this warranty (namely indemnification in the event that breach of the promise not to provide misleading prospectuses causes the broker-dealer to become embroiled in litigation) demonstrates that this warranty is nothing more than a contemplated contract term.

consideration for the transfer of securities."). The SEC makes no such allegations and therefore any claims related to the selling agreements are unavailing to rescue the New Complaint from dismissal.

> **D.  All Counts Alleging Primary Liability Should Be Dismissed Because The Commission Fails To Adequately Plead Scienter.**

This Court did not find it necessary to reach the issue of the adequacy of the SEC's allegation that Mr. Tambone acted, or failed to act, with the requisite scienter, owing to the numerous other pleading deficiencies of the First Complaint (nor need it do so now, as those deficiencies have not been adequately corrected). Nevertheless, the inadequacies of those allegations of scienter are an independent basis for dismissal here as well.

To state a claim under Section 10(b), Rule 10b-5, and Section 17(a)(1), the Commission must plead facts supporting a strong inference that Mr. Tambone acted with "a mental state embracing intent to deceive, manipulate, or defraud[,]" i.e., that he acted with "scienter." See Aldridge v. A.T. Cross Corp., 284 F.3d 72, 82 (1st Cir. 2002); see also Aaron v. SEC, 446 U.S. 680, 691-97 (1980); Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n. 12 (1976). To plead scienter properly, the Commission must present sufficient facts to establish that Mr. Tambone "consciously intended to defraud" or acted with "a high degree" of recklessness. See Aldridge, 284 F.3d at 82. The Commission, however, once again fails to allege any facts supporting a strong inference of scienter. The best the Commission can come up with is the conclusory allegation that Mr. Tambone's salary benefited in some indirect way by the increased sales resulting from the alleged fraud.

This is not enough, as the First Circuit has explained that allegations a defendant "had the motive and opportunity to make false and misleading statements" generally are insufficient to create the requisite inference of scienter. Geffon v. Micrion Corp., 249 F.3d 29, 36 (1st Cir.

2001); see also Greebel, 194 F.3d at 197.  Facts creating an inference that a defendant "must have known" about the alleged fraud likewise are insufficient.  See Maldanado v. Dominguez, 137 F.3d 1, 9-10 (1st Cir. 1998); Orton v. Parameteric Tech. Corp., 344 F. Supp. 2d 290, 306 (D. Mass. 2004).  Rather, a pleading party must allege "some additional misconduct" to support the required inference of scienter.  See Geffon, 249 F.3d at 36.  As the First Circuit highlighted in Geffon:

> Evidence we have found relevant to the scienter issue includes:  insider trading in conjunction with false and misleading statements; a divergence between internal reports and public statements; disclosure of inconsistent information shortly after the making of a fraudulent statement or omission; bribery by top company officials; evidence of an ancillary lawsuit, charging fraud, which was quickly settled; disregard of current factual information acquired prior to the statement at issue; accounting shenanigans; and evidence of actions taken solely out of self-interest.

See Geffon, 249 F.3d at 36; Greebel, 194 F.3d at 196 (and cases cited therein).  Moreover, pleading scienter based on reckless conduct requires "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care" that "comes closer to being a lesser form of intent than merely a greater degree of ordinary negligence."  See SEC v. Fife, 311 F.3d 1, 9-10 (1st Cir. 2002); Geffon, 249 F.2d at 35; Cook v. Avien, Inc., 573 F.2d 685, 692 (1st Cir. 1978).  Such "additional misconduct" is not present in the New Complaint.  Accordingly, this Court should dismiss all of the Commission's scienter-based claims.

> **E.     The Commission's New Complaint Does Not Cure The Pleading Deficiencies For Aiding And Abetting Liability Against Mr. Tambone.**

This Court has previously made clear that, to properly establish a claim for aiding and abetting under the Advisers Act and Section 15(a), the Commission must plead with particularity that (1) a primary violation was committed; (2) the defendants had a general awareness that their conduct was part of an overall activity that was improper; and (3) the defendants knowingly and

15

substantially assisted in the primary violations. See Tambone, 417 F. Supp. at 136; Druffner, 353 F. Supp. 2d at 150. In addition, in the absence of a duty to disclose, a defendant should not "be held liable as an aider and abettor" unless the plaintiff "proves that the defendant had actual knowledge of the improper activity of the primary violator and of his role in that activity." Cleary, 700 F.2d at 777 (emphasis supplied).

This Court has already clearly stated that because Mr. Tambone had no duty to disclose any market timing arrangement with investors, "the SEC's complaint must allege, with particularity, that the defendants' silence or inaction was consciously intended to further the principle violation." Tambone, 417 F. Supp. 2d at 136-37. "In determining whether silence or inaction was accompanied by conscious intent to assist the primary violation, courts must determine whether the defendant threw 'in his lot with the primary violators' and 'benefited' from the alleged silence." Tambone, 417 F. Supp. 2d at 137, quoting Austin, 836 F. Supp. at 39-40. Courts have been "particularly exacting" in determining conscious intent and "economic motivation alone is too remote and minimal" to support such a finding. Tambone, 417 F. Supp. 2d at 137, quoting Austin, 836 F. Supp. at 40.

In that regard, this Court held that that the SEC did not plead with sufficient particularity that the defendants had "actual knowledge" of the improper activity of the primary violators or of their roles in that activity. Tambone, 417 F. Supp. 2d at 137. Moreover, the SEC did not demonstrate that the defendants possessed the "conscious intent" necessary for their inaction to qualify as knowing and substantial assistance. Id. The SEC's allegations that the defendant had an economic motivation -- that the defendants benefited from the market timing arrangements through the collection of fees -- without more, were deemed insufficient. Id. As a result of these pleading deficiencies, the Commission's case was dismissed.

The SEC's New Complaint does nothing to remedy those pleading deficiencies. As discussed above, the new allegations set forth in the SEC's New Complaint allege that (1) Mr. Tambone was responsible for the distribution of prospectuses by Columbia Distributor; (2) that he allowed the dissemination of false statements therein; and (3) that he was involved in some prospectus revisions. New Complaint ¶¶ 3, 9, 25. These allegations, which constitute the only new allegations in the New Complaint, do not speak to whether Mr. Tambone had "actual knowledge" of the alleged improper activity of the primary violator or that his inaction was consciously intended to assist primary violations of federal securities laws. Accordingly, such allegations cannot save the SEC's claim for aiding and abetting. Likewise, the SEC's new allegations are not sufficiently particular under Rule 9(b). See Bamberg v. SG Cowen, 236 F. Supp. 2d 79, 91 (D. Mass. 2002) (granting motion to dismiss aiding and abetting claim and holding that "[a] claim of aiding and abetting fraud must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)"); see also S.E.C. v. Lucent Technologies, Inc., 363 F. Supp. 2d 708, 727 D.N.J. 2005) (dismissing aiding and abetting securities fraud claim against officer where SEC failed to allege knowing and substantial assistance with sufficient particularity). The mere allegation that Mr. Tambone "allowed" Columbia Distributors to disseminate prospectuses, or even that he was "responsible for" the distribution of prospectuses, is not the knowing and substantial assistance required under the law. Something more than mere inaction is required. See S.E.C. v. Peretz, 317 F. Supp. 2d 58, 64 (D. Mass. 2004).

## IV. CONCLUSION

For the foregoing reasons, and the reasons stated in Defendant Robert Hussey's *Memorandum of Law in Support of Robert Hussey's Motion to Dismiss the Complaint*, this Court should grant Mr. Tambone's Motion to Dismiss and dismiss the Commission's Complaint against him in its entirety with prejudice.

> Respectfully submitted,
>
> JAMES TAMBONE,
>
> By his attorneys,
>
> /s/ John A. Sten
> A. John Pappalardo (BBO #388760)
> John A. Sten (BBO #629577)
> David G. Thomas (BBO# 640854)
> GREENBERG TRAURIG, LLP
> One International Place
> Boston, MA  02110
> (617) 310-6000

Dated: July 14, 2006

### CERTIFICATE OF SERVICE

I, John A. Sten, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent, via First-Class Mail, to those indicated as non-registered participants on this 14th day of July, 2006.

> /s/ John A. Sten
> John A. Sten

bos-fs1\195805v02\64599.010200