# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION NO. 06-10885-NMG |
| JAMES TAMBONE and ) ROBERT HUSSEY, ) | |
| Defendants. ) | |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## ROBERT HUSSEY'S MOTION TO DISMISS THE COMPLAINT

Kelly, Libby & Hoopes, P.C.
175 Federal Street
Boston, MA 02110
(617) 338-9300

Clifford Chance US LLP
31 West 52nd Street
New York, New York 10019
(212) 878-8000

Attorneys for Robert Hussey

NYA 802111.1

-i-

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

DISCUSSION ......................................................................................................................... 2

I.  THE COMMISSION ONCE AGAIN HAS FAILED TO ARTICULATE A
    MISSTATEMENT CLAIM AGAINST MR. HUSSEY ................................................ 2

    A.  This Court Applied the Proper Standard in Requiring the Commission to
        Identify a Misleading Statement Actually Made by Mr. Hussey ......................... 3

    B.  The Commission Fails to Identify a Misstatement Actually Made by Mr.
        Hussey ................................................................................................................. 4

II. THE COURT'S DECISION ON THE PRIOR MOTION TO DISMISS
    CONTINUES TO PRECLUDE THE REST OF THE COMMISSION'S CLAIMS ........ 6

    A.  The Commission Still Fails to Identify a Disclosure Duty ................................. 7

    B.  The Commission Still Fails to Allege a Scheme to Defraud .............................. 8

    C.  The Commission Still Fails to Articulate Aiding and Abetting Claims ............. 8

    D.  The Commission Still Fails to Plead Fraud with the Requisite Particularity ........ 9

III. THE COMMISSION HAS FAILED TO ESTABLISH ANY REASON FOR
     TOLLING THE STATUTE OF LIMITATIONS ON ITS STALE CLAIMS ............... 10

CONCLUSION ..................................................................................................................... 11

## TABLE OF AUTHORITIES

## CASES

*Anixter v. Home-Stake Production Co.*,
    77 F.3d 1215, 1226-27 (10th Cir. 1996) ................................................................................3

*Arizona v. California*,
    460 U.S. 605, 618 (1983) ........................................................................................................6

*Carbone, Inc. v. Proctor Ellison Co.,*
    102 F.R.D. 951 (D. Mass 1984) .............................................................................................9

*Dirks v. SEC,*
    463 U.S. 646 (1983) ................................................................................................................7

*DM Research, Inc. v. College of American Pathologists*,
    170 F.3d 53, 55 (1st Cir. 1999) ...............................................................................................5

*Ellis v. United States*,
    313 F.3d 636, 646 (1st Cir. 2002) ...........................................................................................6

*Field v. Mans*,
    157 F.3d 35, 40 (1st Cir. 1998) ...............................................................................................6

*Hayduk v. Lanna*,
    775 F.2d 441 (1st Cir. 1985) ...................................................................................................9

*In re Scholastic Corp. Securities Litigation*,
    252 F.3d 63, 76 (2d Cir. 2001) ................................................................................................4

*J. Geils Band Empl. Benefit Plan v. Smith Barney Shearson, Inc.*,
    76 F.3d 1245, 1255 (1st Cir. 1996) .......................................................................................10

*Moss v. Morgan Stanley, Inc.*,
    719 F.2d 5, 15 (2d Cir. 1983) ..................................................................................................7

*SEC v. Cedric Kushner Productions, Inc.*,
    417 F. Supp. 2d 326, 332 (S.D.N.Y. 2006) ............................................................................3

*SEC v. Druffner*,
    353 F. Supp. 2d 141 (D. Mass. 2005) ....................................................................................8

*SEC v. KPMG LLP*,
    412 F. Supp. 2d 349, 374 (S.D.N.Y. 2006) ............................................................................4

*SEC v. PIMCO Advisors Fund Mgmt. LLC*,
   341 F. Supp. 2d 454 (S.D.N.Y. 2004) ............................................................................ 3, 4, 8

*SEC v. Tambone*,
   417 F. Supp. 2d 127 (D. Mass. 2006) ............................................................................. *passim*

*Wagner v. Magellan Health Services, Inc.*,
   125 F. Supp. 2d 302, 307 (N.D. Ill. 2000) ............................................................................. 5

*Wright v. Ernst & Young LLP*,
   152 F.3d 169 (2d Cir. 1998) ..................................................................................................2, 3

*Ziemba v. Cascade Int'l, Inc.,*
   256 F.3d 1194 (11th Cir. 2001) ................................................................................................ 3

**PRELIMINARY STATEMENT**

The Commission continues to ignore this Court. Specifically, the Commission's opposition to Mr. Hussey's motion to dismiss utterly neglects to acknowledge—let alone address—the factual and legal weaknesses identified by the Court in its well-reasoned dismissal of the Initial Complaint. The Commission's latest indiscretion comes as no surprise, as it has failed to heed the Court throughout this matter. To wit:

- The Commission initially refused to recognize the Court's "final judgment" dismissing the defective Initial Complaint, and instead insisted that it was entitled to file an amended complaint.

- In later seeking extraordinary relief from the Court's judgment, the Commission chose, "inexplicably, to ignore the required elements entirely and to use its memorandum in support of the Rule 60(b) motion as another opportunity to argue its motion to amend." (*See* Court's Memorandum & Order, May 5, 2006, at 3.)

- Finally, and most importantly, the Commission declined this Court's gracious offer providing the Commission with another opportunity to state actionable claims after "further investigation," and instead filed—a mere two weeks after the court's ruling and without the benefit of any additional discovery—a Complaint that is virtually identical to the dismissed complaint. (*Id.* at 6-7.)

This stubborn pattern of behavior likely is explained by one inescapable truth: the Commission overreached in bringing this case. Indeed, after being widely criticized in late 2003 for a perceived dereliction of its duty to police "market timing," the Commission has responded by attempting to paint all such cases with the same broad enforcement brush. Here, however, the Commission's scattershot legal theories and scant "fact" pleadings do not support claims against Mr. Hussey under the federal securities laws.

The Court was correct in dismissing the Initial Complaint, and will remain so in dismissing the Commission's latest effort.

-2-

**DISCUSSION**

Essentially, the only new issue for the Court to consider here is whether the Commission now alleges an actionable misstatement claim against Mr. Hussey based on its dubious allegations involving an internal "working group" and a privileged e-mail communication of unknown content. (*See* Compl. ¶¶ 10, 34, 36, 37.) The rest of the allegations in the Complaint simply parrot those in the Initial Complaint rejected by the Court, and thus should suffer the same fate. (*See* Section II, infra.)[1]

**I.   THE COMMISSION ONCE AGAIN HAS FAILED TO ARTICULATE A MISSTATEMENT CLAIM AGAINST MR. HUSSEY**

The Court has ruled that, to be held liable for primary violations of the federal securities laws based on the alleged prospectus misrepresentations here, Mr. Hussey *personally must have made* the challenged statements. *See Tambone*, 417 F. Supp. 2d at 132 (citing "authoritative decision" on this issue in *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998)). In its initial opposition papers, the Commission "implicitly concede[d] that [Mr. Hussey] played no role in preparing, drafting or signing the allegedly misleading prospectuses," and the Court concluded that the Commission had failed to identify an actionable misstatement attributable to him. *Id.* at 133.

In an effort to circumvent this Court's judgment, the Commission now adopts two equally unavailing strategies. First, the Commission wrongly questions the continuing vitality of

---

[1]   While we will refrain from burdening the Court in this reply memorandum with a full recitation of the additional reasons for dismissal that the Court previously found unnecessary to consider, Mr. Hussey respectfully refers the Court to his moving brief for a discussion of those bases. (*See* Memorandum of Law in Support of Robert Hussey's Motion to Dismiss, July 14, 2006, at 15-21 (explaining Complaint's failures to (1) identify any actionable misstatements, (2) create a strong inference of fraudulent intent, and (3) comport with due process).)

the standard articulated in *Wright*, which remains the seminal decision on primary liability based on an alleged misstatement. Second, the Commission—without the benefit of any additional discovery—attempts to recast Mr. Hussey as the purported author of the relevant prospectus language by offering two false and speculative allegations that, even if true, still fail to support a misstatement claim.

      A.      The Court Applied the Proper Standard in Requiring the Commission
             to Identify a Misleading Statement Actually Made by Mr. Hussey

In dismissing the Commission's Initial Complaint, the Court applied the "bright line" test established in *Wright*, which requires that "a defendant must actually make a false or misleading statement in order to be held liable" as a primary violator under the federal securities laws. *See Wright*, 152 F.3d at 175; *Tambone*, 417 F. Supp. 2d at 132. A majority of the Circuit Courts of Appeal to consider this issue also have adopted this standard. *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1205 (11th Cir. 2001) (rejecting attempt by plaintiffs to hold liable law firm that allegedly played a "significant role in drafting, creating, reviewing or editing the allegedly fraudulent" statements); *Anixter v. Home-Stake Production Co.*, 77 F.3d 1215, 1226-27 (10th Cir. 1996) (holding that defendants themselves must make a false or misleading statement that they know will reach potential investors).

Indeed, courts recently have applied the *Wright* standard in dismissing attempts by the Commission to attribute others' misstatements to a defendant. *See, e.g., SEC v. Cedric Kushner Productions, Inc.*, 417 F. Supp. 2d 326, 332 (S.D.N.Y. 2006) (rejecting Commission's argument that bright line rule announced in *Wright* is no longer good law, noting that *Scholastic* decision "offers no departure from the substance of the decision in *Wright*"); *SEC v. PIMCO Advisors Fund Mgmt LLC*, 341 F. Supp. 2d 454, 466-67 (S.D.N.Y 2004) (dismissing SEC claims against

senior executive of PIMCO funds based on involvement in market timing arrangements because executive did not personally make or draft any alleged misstatements).[2]

### B. The Commission Fails to Identify a Misstatement Actually Made by Mr. Hussey

While the Commission effectively conceded in its initial opposition that Mr. Hussey played no role in preparing or drafting the challenged prospectus language, *see Tambone*, 417 F. Supp. 2d at 133, the Commission now alleges—in a blatant attempt to shed the burden of the bright line rule—that Mr. Hussey actually "made" the challenged statements.[3] In support of this acrobatic maneuver, the Commission offers two bald allegations, *and nothing more*. Specifically, the Commission now alleges that Mr. Hussey (1) helped lead an internal working group in early 2000 charged with creating procedures designed to address market timing, and (2) "upon information and belief," reviewed and commented on draft prospectus language via a single privileged e-mail communication. (*See* Compl. ¶¶ 10, 34, 36, 37.) These two "facts" do not begin to satisfy the *Wright* standard adopted by the Court. *See, e.g., PIMCO Advisors Fund*

---

[2] The 2001 *Scholastic* decision cited by the Commission certainly did not question the ruling in *Wright*, as it failed even to mention it. *See In re Scholastic Corp. Securities Litigation*, 252 F.3d 63, 76 (2d Cir. 2001) (finding that vice president for investor relations could be held liable for misstatements apparently not directly attributed to him because he "was primarily responsible for Scholastic's communications with investors and industry analysts," and "was involved in the drafting, producing, reviewing and/or disseminating" of alleged misstatements). *See also SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 374 (S.D.N.Y. 2006) (distinguishing court's discussion in *Scholastic* as having occurred in context of assessing whether scienter allegations were sufficient, and noting that false statements included ones made in conference calls with analysts in which vice president had participated).

[3] The Commission apparently also continues to argue that Mr. Hussey should be held liable for the prospectus statements based on unsupported allegations of "dissemination." (*See* Opp. Br. at 8 (alleging that Mr. Hussey made a misstatement because he "knowingly allowed Columbia Distributor to disseminate prospectuses containing market timing representations that he knew to be false").) As this Court already has concluded, "[t]he SEC's claims of primary liability through dissemination do not withstand the weight of contravening case law." *Tambone*, 417 F. Supp. 2d at 134. Indeed, the Commission's latest "dissemination" argument is far weaker than its previously rejected attempt, as the Commission now merely alleges that Mr. Hussey "allowed" the prospectuses to be disseminated by others. (*See* Compl. ¶ 3.)

*Mgmt*, 341 F. Supp. 2d at 467 (concluding that "it would overstep the limitations imposed by *Wright* to charge [defendant] with primary liability for statements the Complaint does not allege he personally drafted or communicated to others").[4]

Indeed, the Commission's opposition papers confirm what already was obvious: the Commission's restyled misstatement claim is little more than a theory in search of facts. Specifically, notwithstanding the Commission's full use of its broad investigatory powers in conducting extensive document discovery and taking the testimony of at least twenty-three witnesses before filing the *Initial Complaint*, not to mention this Court's suggestion that the Commission undertake further investigation to support its rejected allegations *before filing another complaint*, the Commission remarkably claims in its opposition papers that the Complaint should survive because the Commission might be able to develop additional facts later through discovery. (*See* SEC's Opposition to Defendants' Motions to Dismiss ("Opp. Br.") at 7, n.5.)

Put simply, the Commission already has had more than enough chances to articulate actionable misstatement claims, and the Court should not permit this faintly masked "fishing expedition." *See, e.g., DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) (noting that motion to dismiss stage represents bulwark against conclusory and speculative allegations offered simply to obtain additional discovery)*; Wagner v. Magellan Health Services, Inc.*, 125 F. Supp. 2d 302, 307 (N.D. Ill. 2000) (finding that plaintiff's

---

[4]   In any event, the new "fact" about Mr. Hussey's alleged involvement in the working group is patently false. Indeed, multiple documents collected by the Commission in its investigation make it abundantly clear that Mr. Hussey was *not even a member*, let alone a "co-head," of this working group. Also, as previously noted, we urge the Court—if necessary—to conduct an *in camera* review of the e-mail communication, which will remove any doubt that it cannot serve as the basis for a misstatement claim against Mr. Hussey.

-5-

suggestion of turning up additional facts in discovery "is the quintessence of a fishing expedition, and cannot defeat a motion to dismiss").

Surely, the Commission's strategy of offering two speculative—and legally insufficient—falsehoods with the hope of surviving a motion to dismiss so that it might later discover *actual* facts to support its claims is not what this Court had in mind when it dismissed the Initial Complaint "without prejudice." (*See* Court's Memorandum & Order, May 5, 2006, at 6-7 (noting that dismissal intended to allow Commission opportunity to "file a new lawsuit against defendants after a period of further investigation to bolster its allegations").)

## II. THE COURT'S DECISION ON THE PRIOR MOTION TO DISMISS CONTINUES TO PRECLUDE THE REST OF THE COMMISSION'S CLAIMS

As illustrated throughout Mr. Hussey's memorandum of law in support of his motion to dismiss, the Complaint against him amounts to little more than the rejected Initial Complaint dressed up with reorganized paragraphs and meaningless buzzwords such as "scheme" and "duty." The Commission, moreover, declines to address in its opposition papers the numerous legal and pleading deficiencies identified by the Court in dismissing the Initial Complaint, and instead reiterates most of the arguments previously advanced in its opposition to Defendants' successful motions to dismiss.

Consequently, the Court need look no further than its prior decision to dismiss the remainder of the Commission's claims. *See, e.g.*, *Ellis v. United States*, 313 F.3d 636, 646 (1st Cir. 2002) (noting that "a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation") (quotation omitted); *Field v. Mans*, 157 F.3d 35, 40 (1st Cir. 1998) (explaining that "law of the case" doctrine is a "prudential principle that precludes relitigation of the legal issues presented in successive stages of a single case once those issues have been decided"). *See also Arizona v. California*, 460 U.S. 605, 618

(1983) (noting that, "when a court decides upon a rule of law, that decision should continue to govern the same issues").

### A.  The Commission Still Fails to Identify a Disclosure Duty

This Court has ruled that, absent a misstatement attributable to Mr. Hussey, the Commission cannot establish an actionable omission by him. *See Tambone*, 417 F. Supp. 2d at 135 ("Because the defendants in the case at bar were not responsible for the misleading disclosures in the funds' prospectuses, they were under no duty to correct those statements if they became misleading.")  As demonstrated, the Commission remains unable to identify a misstatement by Mr. Hussey (*see* Section I, *supra*), and thus the Commission's omission theory must fail once more.

The Commission again contends—through virtual "cut-and-paste" briefing—that Mr. Hussey owed an independent duty to disclose to investors the market timing arrangements simply because he was a "securities professional."  (*See* Opp. Br. at 12.)  As recognized by the Court, however, this bootstrap attempt to impose a disclosure duty contradicts well-settled law. *See Tambone*, 417 F. Supp. 2d at 134 (noting that a Rule 10b-5 duty to disclose "does not arise from the mere possession of non-public information") (citation omitted).  *See also Dirks v. SEC*, 463 U.S. 646, 657 (1983) (reaffirming that, in Rule 10b-5 case, duty to disclose does not arise "merely from one's ability to acquire information because of his position in the market"); *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 15 (2d Cir. 1983), *cert. denied*, 465 U.S. 1025 (1984) (finding "nothing in the language or legislative history of Section 10(b) or Rule 10b-5 to suggest that Congress intended to impose a *special duty of disclosure* on broker-dealers simply by virtue of their status as market professionals") (emphasis in original).

B.     The Commission Still Fails to Allege a Scheme to Defraud

As the Court previously concluded, the Commission "has failed to allege that the market timing arrangement was a scheme to defraud." *Tambone*, 417 F. Supp. 2d at 136 (noting that "market timing arrangements are not the kind of sham transactions which have been held to qualify as schemes to defraud"). *See also PIMCO*, 341 F. Supp. 2d at 468 (stating that market timing could not constitute a manipulative device intended to defraud investors).

The Commission declines to offer a single new allegation in its Complaint that somehow would transform the challenged conduct into an actionable "scheme." Indeed, the Commission's opposition papers once again cite to cases previously distinguished by this Court, including the Court's decision in *Druffner*. (*See* Opp. Br. at 17.) As the Court has explained:

> [The] decision in *Druffner* also demonstrates the limits of the SEC's argument because the broker defendants in that case employed a manipulative device by using numerous broker identification numbers and opening nearly 200 customer accounts under fictitious names.

*See Tambone*, 417 F. Supp. 2d at 136 (noting that, while all of the cases cited by the Commission "fit into the category of manipulative devices envisioned by the Supreme Court," the Commission's allegations against Mr. Hussey "clearly do not").

C.     The Commission Still Fails to Articulate Aiding and Abetting Claims

The Court previously found that the Commission's allegations against Mr. Hussey had failed to "meet the legal standard for aiding and abetting." *Tambone*, 417 F. Supp. 2d at 137. Specifically, the Court ruled that the Commission (1) had not established that Mr. Hussey had "actual knowledge" of the purported primary violations, and (2) had failed to demonstrate that Mr. Hussey possessed the "conscious intent" necessary for his inaction to qualify as knowing and substantial assistance. *Id*. Once again, the Commission inexplicably fails to address these

deficiencies in its Complaint, and instead chooses to reargue the sufficiency of its initial allegations.

Specifically, the Commission once more contends that it has asserted actionable aiding and abetting claims because it alleges that Defendants' compensation depended in part on mutual fund sales. (*See* Opp. Br. at 25.) As this Court has held, however, "economic motivation alone is too remote and minimal" to demonstrate conscious intent to assist in a primary violation. *See Tambone*, 417 F. Supp. 2d at 137 (citation omitted) (noting that courts have been "particularly exacting" in determining whether defendant "threw in his lot with the primary violators").

D. The Commission Still Fails to Plead Fraud with the Requisite Particularity

As if the multiple, repeated failures outlined above were not enough to conclude that the Commission has not—and cannot—state actionable claims against Mr. Hussey, the latest Complaint also suffers from the Commission's continuing failure to plead fraud with sufficient particularity under Rule 9(b) of the Federal Rules of Civil Procedure. This failure represents yet one more reason to dismiss the action with prejudice. *See, e.g., Hayduk v. Lanna*, 775 F.2d 441, 445 (1st Cir. 1985) (finding dismissal with prejudice justified where plaintiffs on notice before amendments that initial allegations failed to meet particularity requirement of Rule 9(b)); *Carbone, Inc. v. Proctor Ellison Co.*, 102 F.R.D. 951, 953 (D. Mass. 1984) (dismissing with prejudice after plaintiff "had two opportunities to describe his claims, the last after being notified of the [Rule 9(b)] failures of the first complaint").

### III. THE COMMISSION HAS FAILED TO ESTABLISH ANY REASON FOR TOLLING THE STATUTE OF LIMITATIONS ON ITS STALE CLAIMS

In seeking to preserve its otherwise stale claims, the Commission baldly states, without more, that (1) Mr. Hussey "concealed from the investors and the independent trustees of the Columbia Funds the facts regarding the fraud," and/or (2) the fraud "was self-concealing." (*See* Compl. ¶¶ 100-01; Opp. Br. at 28-29.) These empty (and somewhat inconsistent) assertions do not support tolling the five-year statute of limitations governing the Commission's claims, as a plaintiff seeking the benefit of tolling must plead with particularity the facts giving rise to a fraudulent concealment claim. *See, e.g., J. Geils Band Empl. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1255 (1st Cir. 1996) (holding that Fed. R. Civ. P. Rule 9(b) standard applies to fraudulent concealment tolling claims).[5]

All of the Commission's claims based on alleged misstatements or omissions committed prior to May 19, 2001 are time barred.

---

[5] The Commission's inability to offer any support for its concealment claim is not surprising, as the Commission has been aware of market timing for almost a decade. *See Windsor Sec. Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 666 (3d Cir. 1993) (noting Commission's discussion of mutual fund market timing issues in 1998).

-10-

## **CONCLUSION**

For each and every reason set forth in this reply memorandum of law and in all prior pleadings relating to the Commission's claims,[6] Robert Hussey respectfully requests that the Court dismiss the Complaint against him in its entirety *with prejudice*.

Dated: Boston, Massachusetts
September 15, 2006

> Respectfully submitted,
>
> ROBERT HUSSEY,
>
> By his attorneys,
>
> /s/ Frank A. Libby Jr.
> Frank A. Libby, Jr. (BBO # 299110)
>
> Kelly, Libby & Hoopes, P.C.
> 175 Federal Street
> Boston, MA 02110
> Tel.: (617) 338-9300
>
> *Of Counsel:*
>
> Warren L. Feldman (admitted *pro hac vice*)
> Christopher M. Joralemon (admitted *pro hac vice*)
>
> Clifford Chance US LLP
> 31 West 52nd Street
> New York, NY 10019
> Tel.: (212) 878-8000

---

[6] To the extent applicable and not contradictory to any of the arguments herein, Mr. Hussey also joins in the arguments set forth in the reply memorandum of law submitted in further support of Defendant James Tambone's motion to dismiss.

-12-

## **CERTIFICATE OF SERVICE**

I, Frank A. Libby, certify that this documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent by regular mail on September 15, 2006 to those, if any, indicated as non-registered participants.

                                                              /s/ Frank A. Libby, Jr.