UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

SECURITIES AND EXCHANGE
COMMISSION,

       Plaintiff,

v.

JAMES TAMBONE and
ROBERT HUSSEY,

       Defendants.

Civil Action No.:  06-10885 NMG

---

## MEMORANDUM OF LAW IN SUPPORT OF JAMES TAMBONE'S MOTION TO COMPEL AND TO AMEND SCHEDULING ORDER

Defendant James Tambone respectfully submits this Memorandum of Law in Support of his Motion to Compel pursuant to Fed. R. Civ. P. 37(a)(3)(A) and to Amend the Scheduling Order pursuant to Fed. R. Civ. P. 16(b)(4).

## I.  INTRODUCTION

As of the date of the filing of this motion, the Plaintiff Securities and Exchange Commission (the "SEC") has failed to produce "all documents, electronically stored information, and tangible things that [it] has in its possession, custody, or control and may use to support its claims . . . .", Fed. R. Civ. P. 26(b)(1), notwithstanding the fact that it has represented to Defendants James Tambone and Robert Hussey (the "Defendants") that it has produced all non-privileged documents from its investigative files for the matter that led to this litigation, *In re Fleet Complex of Mutual Funds*, SEC File No. B-02005 ("*In re Fleet Complex of Mutual Funds*").  Despite the fact that more than five years have passed since the SEC collected these documents and first informed the Defendants that it had produced them in full to Defendants on

October 5, 2005, more than one hundred pages of documents -- and potentially thousands more -- are still missing as of the SEC's most recent February 7, 2011 production of the investigative file for *In re Fleet Complex of Funds ("Fleet* Investigative File")*.

Over the past four and one half months, counsel for Tambone have repeatedly demanded that the SEC produce the <u>entire</u> *Fleet* Investigative File, as the SEC claimed it had on October 5, 2005 and in its Initial Disclosures on July 6, 2010.  In addition, during that time counsel have undertaken the arduous and costly task of attempting to identify by bates number all specific documents ranges which counsel know to be missing and have four times provided the SEC with detailed letters and charts of these bates ranges.  Yet at the same time, counsel for Tambone have repeatedly made clear that the charts reflected only those documents which counsel "kn[ew] the SEC has (or had) in its possession, but had not produced" based on the cover letters third parties sent to the SEC enclosing productions.  Counsel have repeatedly demanded production of the <u>entire</u> *Fleet* Investigative File, the universe of which is known only to the SEC, which obviously includes, but is not limited to, the missing bates ranges of documents counsel set forth in the charts.

Although the SEC, with the assistance of Bank of America, has produced thousands of documents in February 2011 (including numerous missing prospectuses), still missing are documents known to be in the SEC's possession that have still not been produced, and others which Tambone believes to be in the SEC's possession which have not been produced.  With only three months remaining to complete discovery, and no depositions having been scheduled, Mr. Tambone can no longer wait[1] for the SEC to complete its production of the *Fleet* Investigative File on its own schedule.  It is the SEC's obligation to produce the file, not the

---

[1] Tambone has also served a formal document request on the SEC, pursuant to Fed. R. Civ. P. 34, seeking the production of the full *Fleet* Investigative File.  The SEC's response is due on March 7, 2011.

Defendants' obligation to spend months, and the time and expense of numerous hours repeatedly ferreting out incomplete productions and pursuing the SEC to do what it should have done five years ago or, at the very least, six months ago.  Defendants have, however, made this concerted effort for months, but now seek the assistance of the Court to compel the production of the rest of the *Fleet* Investigative File.

Tambone expects that he will need to rely at trial on the depositions of numerous key non-party witnesses including certain of the alleged market timers and portfolio managers of the funds in which the market timing is alleged to have occurred (including a number of whom were listed by the SEC in its Initial Disclosures), because these non-party witnesses do not reside in Massachusetts or within 100 miles of the U.S. District Court in which this trial will be conducted.  They cannot, therefore, be compelled to attend trial.  *See* Fed. R. Civ. P. Rule 45(c)(3)(A)(ii) ("On timely motion, the issuing court must quash or modify a subpoena that: … (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed or regularly transacts business in person …"); *see also* Advisory Committee Notes to 1991 Amendment to Rule 45, Subdivision (c).  Moreover, this is a very old case in which the events alleged by the SEC occurred 12 to 7 years ago.  It is crucial for the adequate defense of this matter that the entire *Fleet* Investigative File is provided to Defendants prior to all depositions and this is particularly so with respect to these depositions of out-of-state key non-party witnesses.

Accordingly, Tambone respectfully moves this Court to: (1) Order the SEC to produce all non-privileged documents from the *Fleet* Investigative File within 14 days of the date of the Order; (2) preclude the SEC from using any document from the *Fleet* Investigative File which it fails to produce within 14 days of the Court Order; (3) pay the fees and expenses incurred in

making this motion and; (4) extend all current pretrial deadlines 90 days each.

## II.      FACTUAL BACKGROUND

### A.      Case History

This case arises out of an SEC investigation, *In re Fleet Complex of Mutual Funds*, which began in September 2003.  During that investigation the SEC took testimony from 23 witnesses and subpoenaed tens of thousands of documents from dozens of individuals and entities.  In February 2005, the SEC filed its Complaint against the Defendants.

On October 5, 2005, the SEC produced to Defendants "four DVDs containing 63 boxes of imaged documents produced to the SEC during the investigation," *In re Fleet Complex of Mutual Funds*.  **Ex. 1** (Ltr. from L. Cadigan to J. Sten & C. Joralemon, dated Oct. 5, 2005).  The SEC's 2005 letter stated that it had previously provided "six boxes of documents related to this matter, as well as 22 CDs and three ASCII disks," and represented that *"[a]s a result of these productions, you should now have copies of all non-privileged documents subject to disclosure from the SEC's investigative files for this matter*."  *Id.*  (emphasis added).

 On January 2, 2006, the Court dismissed the Complaint.  On May 16, 2006, the SEC filed a second Complaint, which the Court dismissed on December 29, 2006.  On December 3, 2008, a panel of the First Circuit Court of Appeals reversed the dismissal and reinstated all of the SEC's claims.  On March 10, 2010, the First Circuit, *en banc,* ordered dismissal of the Rule 10b-5 claim and remanded the remaining claims for further proceedings.

On June 23, 2010, this Court held a scheduling conference and entered a Scheduling Order on July 1, 2010.  The Scheduling Order provides for, among other deadlines, the completion of fact discovery by April 30, 2011, and allows the Defendants up to 150 hours of depositions and the SEC up to 80 hours.

4

**B.      The SEC's Initial Disclosures and Document Production**

**1.      Documents and Electronically Stored Information**

The SEC served its Initial Disclosures on July 6, 2010.  With regard to relevant

documents, the Initial Disclosures stated:

> Attached hereto as Exhibit B is a list (#1-41) describing by
> category the documents which the Commission may use to support
> its claims in this action.  The list (#1-41) identifies the sources of
> all non-privileged documents contained in the Commission's files
> of the investigation giving rise to this action.

**Ex. 2** (Plaintiff's Initial Disclosures).  The Initial Disclosures further stated that the SEC

"*previously produced to the defendants all of the documents by all of the sources* (#1-41) listed[2]

in <u>Exhibit B</u>" *on October 5, 2005*.  *Id*. (emphasis added).  In addition, the SEC disclosed "a

second list (#1-3) of additional categories of documents in the Commission's files" (investigative

correspondence, subpoenas and formal order) which it said it would make available for

inspection and copying.  *Id*.

On July 30, 2010, the SEC served Supplemental Disclosures, stating that it had "obtained

documents from Edward Stern[3] which it may use to support its claims in this action," and that the

SEC was providing "Stern's documents to all defendants."  **Ex. 3** (Plaintiff's Supplemental

Disclosures).  On August 19, 2010, the SEC produced what it represented were the "additional

categories of documents" referenced in its July 6, 2010 Initial Disclosures and the Stern

documents referenced in its July 30, 2010 Supplemental Disclosures.  *See* **Ex. 4** (Ltr. from D.

London to J. Foster, dated Aug. 19, 2010).

Although the SEC made its production of the *Fleet* Investigative File to Tambone in

---

[2] Exhibit B lists the names of the parties that produced documents to the SEC, including Bear Stearns Securities Corp., FleetBoston Financial Corp., Ilytat, LLC, and Mr. Tambone.

[3] Edward Stern is one of the alleged market timers in the Complaint.  *See* Compl. ¶¶ 67-69.

2005, because the case was dismissed shortly thereafter in January 2006, and remained on appeal for three years, counsel for Tambone did not begin to review the documents in detail until after the case was remanded in 2010.

Shortly after the SEC served its Initial and Supplemental Disclosures, counsel for Tambone began to review the electronic files that had been produced in 2005 and the small additional set of documents that were produced in August 2010.  Although the SEC production purportedly consisted of all those documents that had been produced to the SEC from various third parties during the *Fleet* investigation, it became clear that it did not.  In part, this was determined by reviewing the cover letters from the third parties to the SEC identifying the documents by bates number which accompanied the cover letters.  *See, e.g.*, **Ex. 5** (Ltr. from S. Hansen to Mavis Kelly, dated Sept. 17, 2003).  After the bates ranges in the cover letters were compared with the bates ranges of the documents purportedly produced by the SEC to the Defendants, it became clear that there were thousands of pages of documents that had been produced to the SEC by third parties, but omitted from the SEC's production to the Defendants *See* **Ex**. **6** and Attachment (Ltr. from J. Foster to M. Foster & D. London, dated Oct. 5, 2010).

In addition, in a number of instances, certain page numbers were missing from the bates ranges without any explanation.[4]

Because the majority of the documents missing from the production appeared to be those which had been produced originally to the SEC from Fleet or its employees through their counsel Bingham McCutchen, and because the SEC's production was significantly deficient, on September 10, 2010 Tambone served a subpoena on Bank of America, the successor to Fleet, requesting all of the documents it previously produced to the SEC.  *See* **Ex**. **7** (Subpoena to Bank

---

[4] For example, the SEC had not produced any documents within the bates range Fleet F 1596 to Fleet F 8300.

of America, Inc., dated Sept. 10, 2010).  Bank of America, however, objected to re-producing the

documents that it had already produced to the SEC.  *See* **Ex**. **8** (Ltr. from S. Hansen to P.

DeGiacomo, dated Sept. 27, 2010).

Consequently, Tambone's counsel turned to the SEC to obtain not only the Fleet

documents produced to the SEC but also the entire *Fleet* Investigative File.  On or about

September 22, 2010, counsel for Tambone, Ms. Foster, discussed the deficiencies in the SEC's

production with the SEC's staff attorney Mr. London.  On October 5, 2010, counsel for Tambone

wrote a follow-up letter to the SEC, enclosing a detailed chart of all the pages, by bates number,

that counsel for Tambone had identified in cover letters as having been produced to the SEC, but

were not in the SEC's production to Tambone.  *See* Ex. 6 & Attachment.  Among the missing

documents were thousands of pages from the Fleet productions including the entirety of the

documents which Erik Gustafson and Chris Legallet—two key portfolio managers of funds in

which the complaint alleges there was market timing—had produced to the SEC.

After receiving Tambone's October 5, 2010 letter, the SEC apparently recognized that

their prior document productions were substantially incomplete.  Thus, in October 2010, after

having twice represented that it had produced its entire investigative file, the SEC decided to

reproduce its entire document production.  *See* **Ex**. **9** (Ltr. from D. London to A. Barry, dated

Nov. 4, 2010).  Although the SEC began to re-scan the documents in mid-October, it did not

produce the "first tranche" of this new document production until November 4, 2010.  *See*  **Ex**.

**10** (E-mail from D. London to J. Foster, dated Oct. 19, 2010); Ex. 9.  On November 12, 2010, the

SEC produced what it stated was the "last tranche" of the Fleet Investigative File to Tambone

*See* **Ex**. **11** (Ltr. from D. London to A. Barry, dated Nov. 12, 2010).

However, the SEC's November 2010 production was still incomplete.  This was apparent

because while the November 2010 production contained 30,244 documents compared to the 29,949 documents in the 2005 production, there were 174 documents that were in the 2005 production, but were not in the 2010 production.  Therefore, it was clear that the 2010 production was missing documents that had been produced in 2005, so it could not be a complete production of the *Fleet* Investigative File.  Counsel for Tambone also discovered additional cover letters from third parties to the SEC referencing bates numbered documents which were produced to the SEC with the cover letters.  These cover letters had not been in the SEC's 2005 production and, in some instances, the documents referenced in the letters as having been produced to the SEC were in neither the 2005 production, nor the 2010 production.  *See*, *e.g.* **Ex. 12** (Ltr. from R. Durham to D. London, dated Jan. 12, 2004, producing documents BOA 1 - 141); **Ex. 13** (Ltr. from S. Hansen to C. Moore, dated Aug. 31, 2004, producing documents Fleet B 8490-8752).[5]

Therefore, in November and December 2010, Tambone's counsel again undertook a painstaking and costly review and compared the bates numbers and document identification numbers of documents from the 2010 production with the bates numbers identified in the new cover letters from third parties.  *See* **Ex. 14** (Ltr. from P. DeGiacomo to M. Foster & D. London, dated Dec. 21, 2010).  This review showed that, even in the SEC's November 2010 production, there were thousands of pages of documents that had been produced to the SEC by various third parties as part of the *Fleet* investigation, but not produced to Defendants.  *Id*., Attachment (including Fleet P 01175-07106; Fleet G 12466-14245).  On December 21, 2010, Tambone's

---

[5] It is counsel's preliminary understanding that the following bates prefixes pertain, at least in part, to the following topics:

Fleet B - emails, other than internal Fleet documents
Fleet C - spreadsheets of trading data with cover letters
Fleet D - emails
Fleet G - account statements
Fleet P - prospectuses
Fleet Z - market timing documents from transfer agent.

8

counsel sent a letter to the SEC detailing these deficiencies.  *Id.*

On December 30, 2010 the SEC served responses to Tambone's First Set of Interrogatories, which had requested that the SEC provide specific references to the documents and testimony that support its various allegations.  *See* **Ex**. **15** (SEC's Responses to Interrogatories).

On January 7, 2011, the SEC responded to Tambone's December 21, 2010 letter.  The SEC acknowledged that its November 2010 production was incomplete, stating that "regrettably, one tranche of documents that was part of [the re-scanning] process, while re-scanned, was not uploaded into our system by the vendor and thus not included in the most recent production." **Ex**. **16** (Ltr. from M. Foster to P. DeGiacomo, dated Jan. 7, 2011).  The SEC's letter enclosed a CD with what purported to be the missing "tranche" of documents.  The SEC further stated that it would "continue to look into the other bates ranges that you have identified in an effort to determine if they represent missing documents."  *Id*. 16 at 2.

The SEC's January 7, 2011 production, however, still did not fill all of the gaps in its production of the *Fleet* Investigative File.  Counsel for Tambone (Ms. DeGiacomo), discussed some of these deficiencies during a telephone conference with counsel for the SEC, Mr. Foster, on January 14, 2011.  On January 21, 2011, counsel for Tambone again wrote to the SEC identifying the thousands of pages that were still missing from the list of documents that the SEC correspondence shows was previously produced to the SEC.  **Ex**. **17** (Ltr. from P. DeGiacomo to M. Foster, dated Jan. 21, 2011).  For example, still missing were almost 6,000 pages of prospectuses (documents Fleet P 01175 - 07106), Fleet 2405 - 3036, and BOA 1 - 141.  In addition, Tambone's counsel advised the SEC of numerous additional documents referenced in the SEC's interrogatory responses that had not been produced to Defendants.  For example, the

interrogatory responses reference documents with the bates prefix "Fleet CM," even though the

SEC has never produced any "Fleet CM" documents.  Based on the bates numbers of the

referenced documents (Fleet CM 1156-1157), there appeared to be more than 1000 pages in this

series that were not produced at that time, i.e., CM 0001-1155.  *Id*.  In addition a thumb drive,

which purportedly contained emails, had no readable data on it.[6]  *Id*.

On January 31, 2011, the SEC sent Tambone seven CDs containing documents that had

never previously been produced to Defendants.  *See* **Ex**. **19** (Ltr. from M. Foster to P.

DeGiacomo, dated Jan. 31, 2011).[7]  While the CDs contained some of the documents that had

been previously identified as missing, numerous documents were still missing and the production

raised questions about additional documents that had not been previously known to Tambone.

That same day, Bank of America, not the SEC, produced to Tambone a CD with scanned images

of a number of the documents that had never previously been produced by the SEC.  *See* **Ex. 21**

(Ltr. from D. Rachal to E. Gold, dated Jan. 31, 2011).

On February 4, 2011, the SEC wrote stating that it was producing a thumb drive (ARI

000893) with documents, which replaced a prior version of the thumb drive that when produced

did not have any readable data on it.  *See* Ex. 18.  The SEC stated that it was "continuing to

pursue the remaining items" identified as missing by Tambone.  *Id.*  That same day, Bank of

America made an additional production to Tambone of one CD with more than 600 documents

---

[6] On February 4, 2011, the SEC produced a new copy of this thumb drive with the missing data.  *See* **Ex. 18** (Ltr. from M. Foster to P. DeGiacomo, dated Feb. 4, 2011).

[7] For example, the SEC's January 31, 2011 production included more new cover letters from Fleet's counsel, Bingham McCutchen ("Bingham") , in which Bingham stated it was producing documents to the SEC on March 7, 2006, March 10, 2006 (two letters), March 13, 2006 (two letters), March 14, 2006, March 15, 2006 (two letters), and March 17, 2006.  *See* **Ex. 20** (collection of letters).  These productions were made after the first Complaint in this matter was dismissed but before the second Complaint was filed.  The Bingham cover letters to the SEC reflect that these DVDs contain emails of Tambone and Hussey, and reference other document productions from Bingham to the SEC on Feb. 27, 2006 and March 8, 2006.  These were not produced to Defendants until February 4, 2011 by the SEC.

and noted that it "will continue to search for the other items" previously identified as missing. *See* **Ex. 22** (Ltr. from D. Rachal to E. Gold, dated Feb. 4, 2011).

Most recently, on February 7, 2011, the SEC produced two CDs containing documents, with one CD labeled Fleet CM 529 and a second CD labeled Fleet CM 1 to 528, and Fleet CM 531 to 850. *See* **Ex. 23** (Ltr. from M. Foster to P. DeGiacomo, dated Feb. 7, 2011).

As of the date of this motion, there are still documents which counsel for Tambone *knows* are missing and there are over 30,000 pages which counsel has reason to believe are missing. For example, documents which counsel knows have been produced to the SEC, but not to Tambone, are documents bates numbered BOA1 - BOA141. These documents were produced to the Boston office of the SEC on January 12, 2004 by the San Francisco office of the SEC and consist of documents produced by Bank of America in connection with *In the Matter of Ilytat LLC* (MSF - 2779). *See* Ex. 12. These documents apparently concern Ilytat, LP, one of the market timers the SEC alleges to have been engaged in considerable marketing timing. *Id*. Although it is not known specifically what is contained in these documents, the SEC's claims in this case relate substantially and directly to the activities of Ilytat, one of the key alleged market timers. Thus, Tambone's counsel *know* that the documents were produced to the SEC but the SEC has not produced these to Tambone based on the cover letter from the San Francisco office of the SEC. *Id*.

There are other instances where Tambone has reason to believe, (but does not have the cover letters from third parties to the SEC), that documents were produced to the SEC but were not produced to Tambone. For example, the SEC has produced to Tambone documents with the bates numbers Fleet B 1 - Fleet B 8752 and Fleet B 36034 to 36232. However, the SEC has not produced any documents covering the missing range of nearly 30,000 pages (Fleet B 8753 to

Fleet B 36033).[8]  Although Tambone does not have the cover letters from Bingham to the SEC regarding this bates range, it is extremely unlikely that Fleet would produce documents with a numbering sequence that results in 30,000 missing pages in the middle of a range.  Other examples of documents Tambone has reason to believe are missing are LF A 00001-01782[9]; LF 0001-0574[10] and LF 617-737.  According to cover letters, these documents were produced by Bingham to the Office of the New York Attorney General on September 18, 20, 25 and 30, 2003. *See* **Ex. 24** (Ltrs. from S. Hansen, Bingham to M. Filipakis, New York A.G., dated Sept. 18, 20, 25 and 30 2003, Fleet B 3426, Fleet 3429).[11]  The cover letters show that these documents are directly relevant to the allegations in the complaint i.e., "efforts to deter market timing", "accounts that were closed following Columbia Management Group's review of potential market timing activity," "spreadsheets created by the Dealer Services Department of Liberty Fund Distributor, Inc. concerning accounts with frequent trading."  *Id*.  Moreover, the SEC has produced to Tambone other LF bates ranges, LF 575 - LF 616.

---

[8] As stated above, it is counsel's understanding that documents labeled "Fleet B" consist, at least in part, of Fleet emails.

[9] Only seventeen pages of bates range LF A 00001 - LF A 01782 appear on a privilege log dated September 23, 2003.

[10] Only ten pages of bates range LF 0001 - 0574 appear on a privilege log dated September 23, 2003.

[11] The September 20, 2003 cover letter states in part:

> Please note that documents LF 471 - LF 473 concern efforts to deter market timing.  Documents LF 0474 - LF 562 list accounts that were closed following Columbia Management Group's review of potential market timing activity.  Documents LF 0563 - LF 0564 are spreadsheets created by the Dealer Services Department of Liberty Fund Distributor, Inc. concerning accounts with frequent trading . . . .

The September 25, 2003 cover letter states in part" "Please note that documents LF 617 through LF 634 and LF 640 through LF 685 concern market timing policies and procedures . . ."

The September 30, 2003 letter states in part: "Documents LF 686 through LF 721 and LF 735 through LF 737 concern "Canary" as defined in your Subpoena dated August 29, 2003."

Finally, in 2005 the SEC provided among other electronic data three discs entitled BEAR 197505, 91833 and 92138.  These discs appear to contain trading data.  It is unknown what the random bates numbers are that appear on these discs as they do not follow sequentially from any other bates range in Tambone's possession.

## III.   ARGUMENT

### A.   The Court Should Order The SEC To Produce the Full *Fleet* Investigative File By a Date Certain.

Federal Rule of Civil Procedure 26(a)(1) provides that:

> [A] party must, without awaiting a discovery request, provide to the other parties: . . . a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

Fed. R. Civ. P. 26(a)(1)(A)(ii).  Moreover, subdivision (e) of Fed. R. Civ. P. 26 requires a party to supplement incomplete or incorrect initial disclosures and responses made pursuant to subdivision (a):

> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

Fed. R. Civ. P. 26(e).  As the Advisory Committee Notes to the 1993 Amendments ("1993 Advisory Committee Notes") adding the initial disclosure requirement explain: "A major purpose of the revision is to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information, and the rule should be applied in a manner to achieve those objectives."  *See* Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26.  The 1993 Advisory Committee Notes state that while subparagraph (B)

13

does not require production in the first instance, the parties are "expected to obtain the documents desired by proceeding under Rule 34 or through informal requests,"[12] but here, it cannot be gainsaid that Tambone has repeatedly attempted to obtain the documents through the latter method for four and one half months.

Where a party fails to disclose or supplement as required by Fed. R. Civ. P. 26(a) or (e) Rule 37 authorizes the court to impose a range of sanctions. *See* Fed. R. Civ. P. 37(a)(3)(A) ("If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions."). Fed. R. Civ. P. 37(c)(1) states:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> > (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> >
> > (B) may inform the jury of the party's failure; and
> >
> > (C) may impose any other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

*Id.*[13] *See Finley v. Hartford Life Ins. & Acc. Ins. Co.*, 249 F.R.D. 329, 332-33 (N. D. Cal. 2008)

(imposing monetary sanctions against defendant where insurer disclosed and produced only a

---

[12] This section of the 1993 Advisory Committee Notes states in full:

> Unlike subparagraphs (C) and (D), subparagraph (B) does not require production of any documents. Of course, in cases involving a few documents a disclosing party may prefer to provide copies of the documents rather than describe them, and the rule is written to afford this option to the disclosing party. If, as will be more typical, only the description is provided, the other parties are expected to obtain the documents desired by proceeding under Rule 34 or through informal requests.

[13] Although Tambone does not seek specific sanctions under Rule 37(c)(1) at this time, he reserves the right to seek such sanctions at a later time.

portion of administrative file related to plaintiff's claim, but failed to produce "full version" of relevant surveillance video until six months after initial disclosure); *HipSaver Co., Inc. v. J.T. Posey Co.*, 497 F. Supp. 2d 96, 104 (D. Mass. 2007) (excluding "newly produced 2006 sales data and order[ing plaintiff] to pay attorney's fees and reasonable expenses resulting from the discovery violations" under Rule 37(c)).[14]

The situation here is nearly identical to that in *Finley*. There, the defendants "indicated [in their initial disclosures] that they were disclosing a copy of the administrative record related to Plaintiff's disability claim, and produced copies of the claim file, electronic notes, Special Investigations Unit ('SIU') file, [and] surveillance videos of February 2001 and October 2001." 249 F.R.D. at 331. The surveillance video that was produced, however, "was not the full version of the February 2001 surveillance," *id.* at 331-332, omitting a key scene due to the error of an administrative assistant who failed to search the 'old data base.'" *Id.* at 332. The Court found that the defendants failed to produce the full video due to defendant's failure to conduct a reasonable search, holding that the production of the incomplete video was, therefore, in violation of Rule 26(a)(1). Consequently, the Court ordered the defendants to pay $9000 in sanctions for plaintiff's attorneys fees related to the failure to disclose. *Id.* at 333.

Here, similarly, the SEC's Initial Disclosures stated that it "previously produced to the defendants all of the documents by all of the sources (#1-41) listed in Exhibit B," which represented "all non-privileged documents contained in the Commission's files of the [*Fleet*] investigation giving rise to this action", Ex. 2, but in fact it has not completed its production of

---

[14] *Cf Solis-Alarcon v. United States*, 514 F. Supp. 2d 185, 190 (D.P.R. 2007) (although party may elect to provide "description by category and location," of documents falling within the scope of the Rule, a party may by its actions be deemed to have "voluntarily assumed the further duty to produce the initially disclosed documents" but where plaintiffs "sat idly by and let discovery deadline expire without pursuing the promised production of documents , court declined to impose sanction of excluding documents from summary judgment)

the *Fleet* Investigative File.  This case is more egregious than *Finley* where here, the SEC has not

only failed to produce all of the non-privileged documents that are part of the *Fleet* Investigative

File, but has failed to do so despite Tambone's repeated detailed requests.  *See* Ex. 16

(acknowledging that SEC would continue to investigate missing documents); Ex. 19 (explaining

that SEC will follow-up regarding continued "search efforts" for missing documents).  In *Finley*,

by contrast, the defendant eventually complied with Fed. R. Civ. P. 26(e) by producing the full

video and the plaintiff had not made repeated requests with specificity.  *Finley*, 249 F.R.D. at

332 .

     As of the date of this motion, the SEC still has not produced documents bates numbered

BOA1 - BOA141.  As stated above, these documents were produced to the Boston SEC on

January 12, 2004 by the San Francisco SEC and consist of documents related to Ilyat, LP, one of

the key market timers the SEC alleges to have been engaged in considerable marketing timing.

In addition, as set forth above there are instances where Tambone has reason to believe that other

documents or pages are missing.  For example, based on a very large gap in bates numbers, it

appears that 30,000 pages were produced to the SEC and are still missing (Fleet B 8753 to Fleet

B 36033).  Other examples of documents Tambone has reason to believe are missing are LF A

00001 - 01782; LF 0001 - 0574 and LF 617-737.  BOA1 - BOA141 has been twice identified

by Tambone to the SEC as missing.  *See* Exs. 14 and 17.  Even if the remaining bates ranges

have not been specifically identified to the SEC as missing, that should not benefit the SEC at

this late date.  Counsel has repeatedly demanded that the <u>entire</u> *Fleet* Investigative File be

produced, *including but not limited to*, the identified missing bates ranges.  Moreover, counsel

has made clear that it has only provided the bates ranges of documents it knows are missing

based on the cover letters it has.  *See* Ex. 14.  There may, in fact, be an untold number of

additional documents that are in the possession, custody, and control of the SEC, but because the corresponding production cover letters were not produced, counsel for Tambone has no way of knowing that such documents even exist.  *Id.* ("Obviously, if cover letters are missing from the SEC's production, we would have no way of knowing that either the cover letters or the documents associated with those cover letters ever existed." *Id.*)  This point is illustrated in the SEC's January 31, 2011 production.  Incredibly, six months after representing that it had produced the entire *Fleet* Investigative File, the SEC produced five DVDs containing the Defendants' emails, despite multiple, repeated assurances that it had produced its entire *Fleet* Investigative File.  *See* Ex. 19.

There can be no dispute that the *Fleet* Investigative File should have been produced to Defendants long ago as the SEC represented it had in October 2005 and again on July 6, 2010. Over the last four and a half months, Tambone's counsel identified thousands of pages of documents that are specifically referenced in correspondence as having been produced to the SEC during the *Fleet* investigation, but which were not produced to Tambone.  Counsel, furthermore, sent detailed letters and charts to the SEC identifying the missing documents on four separate occasions, *see* Ex. 6; Ex. 14; Ex. 17, and requested that the SEC produce the missing documents and the full *Fleet* Investigative File, promptly.  *Id*.  After months of repeated requests, piecemeal productions and prolonged waiting the SEC, with the help of Bank of America, produced many of the documents specifically identified as missing.

However, as of this date, the *entire Fleet* investigative File has still not been produced and questions remain about whether Defendants, unaided by the court, are able to obtain the entire *Fleet* Investigative File, a file which only the SEC knows.  Troubling too is the fact that the September 20 and 25, 2003 cover letters from Bingham to the Office of the New York

Attorney General (*See* Exh. 24) reference documents as yet unproduced which may contain exculpatory information ("Please note that documents F 471 - LF 473 concern efforts to deter market timing.  Documents LF 0474 - LF 562 list accounts that were closed following Columbia Management Group's review of potential market timing activity" *Id*. Sept 20, 2003; LF 617 through 634 and LF 640 through LF 685 concern market timing policies and procedures. *Id*. (Sept. 25, 2003).  Therefore, Tambone can no longer wait for the SEC to find and produce the full *Fleet* Investigative File it purported to produce long ago.  The SEC has had years to do so. In the circumstances set forth herein, the SEC's violation of Rule 26(a)(1)(A) is clear, *Finley*, 249 F.R.D. at 332-33, and only a Court Order will provide the SEC the needed incentive to complete its production immediately.  The SEC may argue that it has supplemented its productions when asked to do so and over the last four and a half months it has in fact supplemented its production.  However, at this late date the Defendants should not, and indeed cannot, bear the burden of continuing to try and puzzle together whether documents are missing from this vast production.  It cannot be gainsaid that the Defendants cannot know what comprises the entire *Fleet* Investigative File.  Only the SEC knows what it has, and what it has produced to Defendants and it is the SEC's obligation alone to produce the entire *Fleet* Investigative File.  Because the SEC has failed to do so, as it promised and is obligated to do under Rule 26(a)(1) after numerous requests in the months since its Initial Disclosures, the Court should issue an Order compelling immediate production, 14 days from the date of this Court's Order.  *See* Fed. R. Civ. P. 37(a)(3)(A).

**B.     The Court Should Order The SEC To Pay Tambone's Fees and Costs Incurred In Making This Motion**

Rule 37(a)(5)(A) requires that the party against whom an order compelling production is granted pay the "reasonable expenses incurred in making [the] motion, including attorney's

fees," unless the moving party did not attempt in good faith to obtain the requested information without court intervention, the non-moving party's response or objection was "substantially justified," or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). *See Afreedi v. Bennett*, 517 F. Supp. 2d 521, 526 (D. Mass. 2007) (imposing monetary sanctions for, *inter alia*, failing to comply with Rule 26(a)(1) initial disclosure requirement).

The Court should order the SEC to pay Tambone's fees and expenses incurred in making this motion. *See* Fed. R. Civ. P. 37(a)(5)(A). Tambone's counsel has attempted to resolve this motion with counsel for the SEC in good faith over a number of months, to no avail. *See* Fed. R. Civ. P. 37(a)(5)(A)(i). Furthermore, there is no justification for the SEC's nondisclosure, Fed. R. Civ. P. 37(a)(5)(A)(ii), nor would an award of fees under these circumstances be unjust. *See* Fed. R. Civ. P. 37(a)(5)(A)(iii).[15]

### C.    The Court Should Extend The Deadline For Completing Fact Discovery

Fed. R. Civ. P. 16(b)(4) allows for a scheduling order to be modified "for good cause." The SEC's failure to complete its document production—more than six months after it claimed it already had produced everything—provides such good cause. At the time the July 1, 2010 Scheduling Order was entered, Tambone believed that the SEC's document production was largely complete. Based on that assumption, the Scheduling Order provided sufficient time for completing written discovery and depositions. As detailed above, however, that assumption has proven incorrect. Even if the SEC completes its production in the coming days, the parties have already lost five months from the delays in production since August when discovery began.

---

[15] In the event that the SEC were to take the untenable position that Tambone never requested that it produce the *Fleet* Investigative File, Tambone has also served a formal document request pursuant to Fed. R. Civ. P., Rule 34, seeking the production of the *Fleet* Investigative File. The SEC's response to this formal request is due on March 7, 2011.

Because of this delay, it is not practicable to complete fact discovery by April 30, 2011 (including up to 150 hours of depositions by the Defendants and up to 80 hours of depositions for the SEC as provided in the schedule order).  The Court should therefore amend the Scheduling Order to all pretrial deadlines by 90 days each.

## CONCLUSION

For the foregoing reasons, Defendant Tambone respectfully moves this Court to:

(1) Order the Plaintiff Securities and Exchange Commission to produce all non-privileged documents from the SEC's investigative files for the matter *In re Fleet Complex of Mutual Funds*, SEC File No. B-02005 within 14 days of the date of the Court Order;

(2)     preclude the SEC from using any document from the *Fleet* Investigative File which it fails to produce within 14 days of the Court Order;

(3)     pay Tambone's fees and expenses incurred in making this motion and;

(4)     extend all current pretrial deadlines 90 days each to the following:

a.      Written discovery served by **June 30, 2011**;

b.      Written discovery answered by **July 31, 2011**;

c.      Fact discovery completed by **July 31, 2011**;

d.      Experts designated and disclosures by **August 31, 2011**;

e.      Rebuttal experts by **October 10, 2011**;

f.      Expert discovery completed by **November 31, 2011**;

g.      Dispositive motions filed by **December 15, 2011**;

h.      Responses to dispositive motions filed by **January 15, 2011**;

i.      Pretrial conference, on or after **March 15, 2012**;

j.      Trial set for **May 1, 2012**.

Dated:  February 25, 2011               Respectfully Submitted,

                                        JAMES TAMBONE
                                        By his attorneys,

                                        */s Paula J. DeGiacomo*
                                        A. John Pappalardo (BBO# 388760)
                                        Paula J. DeGiacomo (BBO# 118180)
                                        Jennifer Martin Foster (BBO# 644796)
                                        GREENBERG TRAURIG, LLP
                                        One International Place
                                        Boston, MA  02110
                                        (617) 310-6000
                                        pappalardoj@gtlaw.com
                                        degiacomop@gtlaw.com
                                        fosterje@gtlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent via U.S. first class mail to those indicated as non-registered participants on February 25, 2011.

                                        */s Paula J. DeGiacomo*