UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>PLAINTIFF,<br><br>v.<br><br>JAMES TAMBONE AND ROBERT HUSSEY,<br><br>DEFENDANTS. | CIVIL ACTION NO. 06-10885-NMG |

## SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANT JAMES TAMBONE'S MOTION TO COMPEL

Pursuant to Local Rules 7.1 and 37.1, plaintiff, the Securities and Exchange Commission ("SEC" or the "Commission"), respectfully submits this opposition to defendant James Tambone's Motion to Compel and to Amend Scheduling Order.

### INTRODUCTION

Defendant Tambone asks for the Court's assistance to resolve discovery issues that—had he made a reasonable effort to confer with the SEC—the parties could and should have resolved on their own. Prior to the filing of the instant motion, and consistent with the design of Local Rule 37.1 and Federal Rule of Civil Procedure 37, the parties' cooperative efforts resulted in the correction of certain inadvertent errors in the production of the investigative file for this enforcement action. While Tambone describes for the Court, at some length, the parties' discussions to that end, his motion to compel mostly addresses documents the parties have not discussed previously.

For example, in support of the notion that there are thousands of pages of documents that he should but does not possess, Tambone describes documents bates labeled with a "LF" prefix

and suggests that they contain unknown exculpatory information. (*See* Def.'s Mem. at 12, 17-18) But those documents were not included on the chart of "missing" documents that Tambone recently provided to the SEC. Nor, after informing the SEC that he was filing a motion to compel within a few days time, did Tambone identify those documents to the SEC in response to its requests for information about the nature of his upcoming plea for judicial intervention. When the "LF" ranges of documents were identified belatedly in the motion itself, the SEC quickly determined that it does not possess documents with "LF" bates numbers for a very simple reason: those bates numbers, as confirmed by Tambone's own motion papers, were used by the original producing party to provide documents to the New York Attorney General, *not* the SEC. It appears that those same documents, however, were produced contemporaneously to the SEC using a "Fleet" bates-number prefix and included as such in the SEC's investigative file production here—meaning that Tambone in fact possesses the so-called exculpatory documents that he claims were withheld.

As Tambone concedes, and as described further below, the investigative file production is "vast." (*Id.* at 18)  Thus, in order to have a meaningful dialogue regarding any perceived deficiencies in that production, some degree of specificity is required beyond the perfunctory demands to the SEC for the "complete file" upon which Tambone's motion rests. When stripped of conjecture about missing documents (which proper inquiry would have revealed to be unfounded), Tambone's motion is bare of any issue meriting this Court's attention on a motion-to-compel basis. The motion asks for a little over 100 pages of documents which, contrary to Tambone's protracted argument, were *not* originally produced to the SEC in connection with *In re Fleet Complex of Mutual Funds*, SEC File No. B-2005, but which the SEC has now provided

to Tambone (and could have provided earlier had Tambone shared with the SEC the same information that he shared with the Court).

In short, Tambone opted for the adversarial approach of a motion to compel, when the pragmatic and procedurally proper approach was to seek a discovery conference about the specific documents in question. For this reason, the motion to compel should be denied, though the SEC supports an extension of the schedule in this case.

## **BACKGROUND**

This is a civil law enforcement action alleging that defendants Tambone and Hussey, during their tenures as senior executives of the primary distributor of the Columbia family of mutual funds, negotiated and/or approved arrangements granting market timing privileges to certain mutual fund investors in contravention of fund prospectus disclosures. This is not civil litigation between private parties, and the SEC does not have any personal knowledge of the underlying facts of the case. The SEC knows only what is contained in its investigative file, and it has produced its investigative file, which is substantial, to the defendants as follows.

In October of 2005, the SEC produced to the defendants tens of thousands of pages of documents in the form of four DVDs (containing images of 63 boxes of documents), 22 CDs and three ASCII disks. (*See* Def.'s Ex. 1)[1] The SEC also produced transcripts and sets of exhibits from the investigative testimony of 23 witnesses. (*Id.*; Def.'s Mem. at 4) Following the reinstatement of this case after a lengthy appeal process, the SEC made its initial disclosures on July 6, 2010, identifying the prior 2005 production as documents the SEC may rely on to support its claims and further noting additional categories of documents as available for inspection and

---

[1] This production was made in connection with Civil Action No. 05-10247-NMG, which was dismissed without prejudice and then superseded by this action.

3

review by defendants. (*See* Def.'s Ex. 2)  The SEC supplemented its production with those additional documents on August 19, 2010. (*See* Def.'s Ex. 3, 4)[2]

Tambone's counsel informed the SEC in early October 2010 that, based on a review of third-party production letters to the SEC, certain bates ranges of documents appeared to be missing from the SEC's investigative file production. (*See* Def.'s Ex. 6)  Commission staff promptly looked into the matter and became concerned with the quality of the document scanning and imaging job performed by the SEC's vendor in 2005.  Accordingly, after further consultation with defense counsel, the SEC recalled from storage the boxes of documents that had been scanned in 2005 and had them re-scanned.[3]  Commission staff advised Tambone's counsel that, given the large volume of documents, it would take several weeks to complete this task, and the SEC produced the newly-imaged documents on a rolling basis. (*See, e.g.,* Def.'s Ex. 9, 11)

Although this process resolved some of the issues raised by Tambone, after further consultation between the parties, Commission staff discovered that certain documents—many of which the Commission obtained after the time of the 2005 production to defendants—unintentionally had not been produced.  Commission staff sought diligently to correct those production errors and address any other discrepancy identified by Tambone. (*See* Def.'s Ex. 16, 18, 19, 23)  As of the supplemental production made on February 7, 2011, the Commission staff believed Tambone had all of the documents he sought, save a small number of documents bates

---

[2] Around this same time, the SEC was served with requests for production of documents by both defendants that related to statute-of-limitations issues.  To respond to these broad requests, which sought a large number of documents that were not part of the investigative file, the SEC was required to undertake a search that spanned its many offices around the country plus the federal archives.  Thereafter, the SEC made more than 15 boxes of documents available for inspection and review in early September, 2010.

[3] In the re-scanning process, the second vendor captured pages missed by the first vendor and sought to sort the documents in proper bates number order to make it more efficient for all parties to work with the documents going forward.

labeled BOA 1 – 141. Thus, the SEC was surprised to learn, when it next heard from Tambone several weeks later, that Tambone planned to file a motion to compel regarding thousands of unspecified documents beyond the narrow BOA 1 – 141 bates range. Despite its oral and written inquiries, the SEC was not informed of the nature of the broader set of documents purportedly giving rise to the motion prior to the time of its filing. (*See* E-mail from M. Foster to P. DeGiacomo of Feb. 23, 2011, attached as Ex. 1)

Essentially, the motion to compel asserts, or at least speculates, that the following documents are contained within the SEC's investigative file but have not been produced:

- BOA 1 – 141
- LF A 1 – 1782
- LF 1 – 574
- LF 617 – 737
- Fleet B 8753 – 36033

In this respect, the motion provides the Court with information that Tambone failed to provide to the SEC in any discovery conference.

*First*, the motion explains that the BOA 1 – 141 range of documents was sent from the SEC's San Francisco office to its Boston office on January 12, 2004. (Def.'s Mem. at 11) In his correspondence with the SEC, however, Tambone had indicated that January 12, 2004 was when the documents were produced to the SEC from Bank of America, in connection with investigative file No. B-2005 (*see* Def.'s Ex. 14, 17) —and it was on that basis that the SEC had conducted its search. In fact, the documents were produced by Bank of America on a different date and in connection with a different investigative file (No. MSF-2779). (*See* Def.'s Ex. 12) With the benefit of this additional information, the SEC located the documents and has provided

them to the defendants. (*See* E-mail from M. Foster to P. DeGiacomo, et al., of Mar. 7, 2011, attached as Ex. 2)

*Second*, the motion insinuates that the various LF bates ranges of documents should be found within the SEC's investigative file, yet those bates ranges were not included in either Tambone's December or updated January list of "Bates Number Gaps in SEC Production." (*See* Def.'s Ex. 14, 17) Naturally, as the parties narrowed the list of documents at issue, SEC staff prioritized and focused their search efforts on those documents identified by Tambone in his most recent correspondence. Tambone believes the LF numbered documents are missing because he located third party production letters to the New York Attorney General's Office enclosing those documents. (Def.'s Mem. at 12) But as the letters themselves make obvious, the productions described therein were not directed to the SEC. It appears that the Fleet/Columbia entities, in responding to certain inquiries from regulatory authorities, contemporaneously produced similar documents (in similar increments and number order) using different prefixes. Thus, in this instance, "LF" labeled documents were provided to the New York Attorney General, whereas "Fleet" labeled documents were provided to the SEC.[4] To illustrate, documents bates labeled LF 575 – 580 and Fleet 575 – 580 are attached hereto for comparison. (*See* Exhibits 3 & 4.)[5] Notably, the LF numbered documents are stamped with a "FOIL," as opposed to "FOIA," confidential treatment request, further indicating that they were not produced to the SEC. ("FOIL" is an acronym for New York's Freedom of Information Law.)

---

[4] It appears that copies of the production letters to the New York Attorney General's Office are found within the SEC's investigative file because, in response to requests seeking documents provided to fund boards regarding market timing, the Fleet/Columbia entities produced to the SEC a correspondence binder provided to a fund board which contained letters exchanged with both regulatory authorities. (Representative excerpts from this binder are attached hereto as Exhibit 5.)

[5] Tambone's motion (at page 12) states that the SEC produced LF 575 – 616 to Tambone, but that too is incorrect. (*See* Def.'s Ex. 21 (Ltr. From D. Rachal to E. Gold, dated Jan. 31, 2001, enclosing, *inter alia*, LF 575 – 616))

*Third*, Tambone's motion theorizes that the SEC should possess documents bates labeled Fleet B 8753 – 36033, but this new theory was not the subject of any prior discovery conference between the parties. Nonetheless, Tambone presses the issue with the Court, reasoning that, because there are Fleet B documents with bates numbers below and above this range, it would be illogical to have such a bates number gap in the Fleet/Columbia original production. (*See* Def.'s Mem. at 11-12) The higher-numbered Fleet B documents, however, were not produced in sequential order, rather the Fleet/Columbia entities resumed producing lower-numbered Fleet B documents after producing Fleet B 36034 – 36232; for example:

| Date Produced | "Fleet B" Bates Numbers |
|---|---|
| 12/9/03 | Fleet B 3628-3634 |
| 12/19/03 | Fleet B 3635-3735 |
| 12/29/03 | **Fleet B 36034-36232** |
| 1/16/04 | Fleet B 3736-3786 |
| 1/21/04 | Fleet B 3787-4063 |
| 1/28/04 | Fleet B 4064-4070 |
| 2/5/04 | Fleet B 4071-4133 |
| 2/9/04[6] | Fleet B 4134-4151 |

Further, to date, neither Bank of America (the successor to the Fleet/Columbia entities whom Tambone subpoenaed in this action) nor the SEC has located a cover letter or documents for any production falling within the range of Fleet B 8753 to Fleet B 36033.

Finally, one thing addressed by Tambone's motion that the parties *have* discussed on several occasions over the past few months, is the case schedule. The SEC has consistently advised Tambone that it would not oppose a motion to extend the schedule and all parties discussed filing such a motion jointly. Indeed, given the complexity of the case, the SEC viewed a longer schedule appropriate to begin with, but defendant Tambone insisted on a shorter

---

[6] The cover letters for the above-cited Fleet B productions are collectively attached hereto as Exhibit 6.

schedule. (*Compare* SEC/Hussey Joint Statement & Discovery Plan, Doc. 35, *with* Tambone Statement & Discovery Plan, Doc. 38)

## ARGUMENT

Before filing a motion to compel discovery, the moving party is obligated to confer with opposing counsel and make a good faith effort to resolve the dispute without court intervention. This requirement, rooted in sound considerations of judicial economy, is embodied in both the Local Rules of this Court and the Federal Rules of Civil Procedure. Indeed, Local Rule 7.1(a)(2) requires that before filing *any* motion, counsel must "certify that they have conferred and have attempted in good faith to resolve or narrow the issue." Specifically addressing discovery disputes, Local Rule 37.1 requires a similar certification, one signifying that prior to filing the discovery motion, the moving party conferred with opposing counsel in good faith "to narrow the areas of disagreement ***to the greatest possible extent***." LR 37.1(a) (emphasis added); *accord* Fed. R. Civ. P. 37(a)(1) (stating that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action"). Local Rule 26.2(c) expressly precludes a judicial officer from considering "any discovery motion that is not accompanied by a certification, as required by LR 7.1(a)(2) and LR 37.1(b), that the moving party has made a reasonable and good faith effort to reach agreement with opposing counsel ***on the matters set forth in the motion***." (emphasis added)

Here, the good faith requirement of Local Rule 37.1, mandating that the parties confer on all disputed issues *before* the motion is filed, has not been satisfied.[7] When Tambone orally informed the SEC (on February 23, 2011) of his intent to file a motion to compel, his counsel

---

[7] Tambone's motion includes a certification indicating his counsel satisfied Local Rule 37.1, but as described herein, that certification is erroneous.

was unable to describe the documents the motion aimed to address and, moreover, failed to respond to a written request from the SEC's counsel (sent later that day) further inquiring about the basis for the motion, despite not filing the motion until two days later. (Defense counsel responded only after having filed the motion.) While Tambone points to an exchange of letters about the investigative file production, the "missing" documents at the crux of the motion are, to a large degree, not the same as those identified in the correspondence. Tambone even concedes as much. (*See* Def.'s Mem. at 16 (referring to BOA 1 – 141 and then stating "[e]ven if the remaining bates ranges have not been specifically identified to the SEC as missing . . ."))

Tambone assumed that having conferred previously with the SEC about other document issues, this obviated the need to confer with the SEC regarding the new issues addressed by his motion. The wrongheadedness of that assumption is on display here, for the major deficiencies Tambone purports to have unearthed in the SEC's disclosures do not exist. As described above, the SEC does not possess LF A 1 – 1782, LF 1 – 574, LF 617 – 737, or Fleet B 8753 – 36033 and for good reason: no such documents were produced to the SEC during its investigation.[8] If Tambone had conferred with the SEC, at the very least the issues now before the Court could have been narrowed in scope, though perhaps eliminated altogether. *See, e.g., Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 101 (D. Mass. 1996) ("[T]he purpose of a full consultation pursuant to Local Rule 37.1(A) is to enable the parties to attempt to narrow, if not resolve, their dispute. It is not up to the Court to expend its energies when the parties have not sufficiently expended their own.").

---

[8] These are not the first documents Tambone has incorrectly claimed the SEC should have. (*See* Def.'s Ex. 16, Ltr. from M. Foster to P. DeGiacomo, at p.3) Contrary to Tambone's suggestion, gaps in bates numbering may legitimately occur, particularly in large collections where a multitude of labels and reviewers are involved in the production process.

Because even as to the remaining documents, BOA 1-141, it is evident that Tambone could have secured disclosure without court action. Tambone correctly notes that his December and January letters made reference to this bates range, but the information provided therein was not entirely accurate and at no point did Tambone specifically discuss BOA 1-141 with the SEC. *See Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999) ("The duty to confer involves more than making a certain number of contacts with opposing counsel. The quality of the contacts is far more important."). Moreover, there was no reason to believe that the parties had reached an impasse in their discussions and that a motion to compel was Tambone's last resort. *See Hasbro*, 168 F.R.D. at 101 (defendant failed to comply with rule requiring conference regarding discovery dispute; counsel had discussed the matter with opposing counsel, but the discussions had not reached an impasse). To the contrary, as the correspondence attached to Tambone's motion in fact shows, at every turn the SEC has cooperated with his requests for additional information. Indeed, Tambone has now been provided BOA 1 – 141, after his motion illuminated that these documents were *not* produced to the SEC in connection with *In re Fleet Complex of Mutual Funds*, SEC File No. B-2005.[9]

In sum, Tambone did not make a sufficient effort to resolve the instant discovery issues informally prior to asking for the Court's assistance, as is required by Local Rule 37.1. *See Williams v. Sprint/United Mgmt. Co.*, 245 F.R.D. 660, 664 (D. Kan. 2007) ("Meet and confer requirements are not satisfied by requesting or demanding compliance with the requests for discovery. The parties must determine precisely what the requesting party is actually seeking; what responsive documents or information the discovering party is reasonably capable of producing; and what specific, genuine objections or other issues, if any, cannot be resolved

---

[9] BOA 1 – 141 also does not comprise documents the SEC intends to use to support its claims in this case. *Cf.* FRCP 26(a)(1)(A)(ii).

without judicial intervention." (internal quotations and citations omitted)). Instead of attempting to narrow any remaining issues in dispute, Tambone, by his motion, expanded them—hastily inventing areas of controversy where none should exist. The SEC does not deny that certain documents could have been produced to Tambone earlier,[10] but there is also no denying that, at the time he filed his motion, Tambone had received those documents (which comprise a very small percentage of the voluminous investigative materials that were turned over to the defendants without service of any document request).[11] Thus, entry of the requested order for production is unwarranted and an award of Tambone's fees and costs would be manifestly unjust.[12]

The SEC's investigative "file" is actually a mountain of paper and data that was originally produced by various third parties in well over 100 different increments, in different mediums, to a number of different individuals, offices and divisions within the SEC, some four to seven years ago. This is said not to minimize the SEC's discovery obligations, but merely to point out that it necessarily took time to fully address the issues raised by Tambone in his letters. *See, e.g., Fraser v. Nationwide Mut. Ins. Co.*, 334 F. Supp. 2d 755, 762 (E.D. Pa. 2004) (sanctions not appropriate for defendant's "somewhat slow response" to certain discovery

---

[10] Despite the fact that the schedule in this case was entered in June 2010, Tambone argues disingenuously that "the SEC has had years" to produce its investigative file materials. (*See, e.g.*, Def.'s Mem. at 18) By the same token then, Tambone has had years to review the production made by the SEC in 2005 but "Tambone did not begin to review the documents in detail until after the case was remanded in 2010." (*Id.* at 6)

[11] Notably, Tambone served a document request for the SEC's investigative file materials on February 3, 2011, and moved to compel production of those documents prior to the time the SEC's response to the document request was due.

[12] Tambone contends that this case is on all fours with *Finley v. Hartford Life & Accident Ins. Co.*, 249 F.R.D. 329 (N.D. Cal. 2008), but the only parallel that can be drawn is that *Finley* addressed the completeness of a party's production accompanying its initial disclosures. *Finley* is otherwise distinct and, in any event, neither controlling nor persuasive. The *Finley* court decided a motion for sanctions under Rule 37(c)(1), which Tambone does not seek here (*see* Def.'s Mem. at 14 n.13), where the moving party claimed she would not have incurred expenses associated with three depositions and certain expert work had her opponent provided certain discovery materials sooner. The court granted the motion, which motion followed roughly 21 months after the initial disclosures at issue, but awarded only $9,000 of the approximately $58,000 in requested sanctions.

demands given it was a complex case involving thousands of documents and a multitude of witnesses). Unlike private litigation, where the party producing documents has a familiarity with the documents gained through their creation and organization in the ordinary course of business, here the SEC has no more familiarity with the documents originally produced by the Fleet/Columbia entities than Tambone (and in some respects, Tambone likely has greater familiarity with the documents as a result of his years working for and with those entities). The burden of searching through the investigative file is the same for Tambone as it is for the SEC. (Indeed, private law firms often have access to technological resources and large numbers of attorneys and paralegals that exceed the resources of the SEC's attorneys.)

There no doubt has been time spent on both sides of the fence to address these and other document production issues, though the SEC respectfully submits that it is misleading to attribute the need for a longer schedule solely to those issues—the SEC has always viewed a longer schedule appropriate given the complex nature of the litigation. The SEC assents to the proposal set forth by Tambone (which incidentally is in line with what the SEC originally proposed (*see* Doc. 25)), with the following modifications to correct a few dates falling on weekends (and one date that does not exist):

- Written discovery served by June 30, 2011;
- Written discovery answered **August 1, 2011**;
- Fact discovery completed **August 1, 2011**;
- Experts designated and disclosures by August 31, 2011:
- Rebuttal experts by October 10, 2011;
- Expert discovery completed by **November 30, 2011**;
- Dispositive motions filed by December 15, 2011;

12

- Response to dispositive motions filed by **January 16, 2011**;

- Pretrial conference, on or after March 15, 2012;

- Trial set for May 1, 2012.

## CONCLUSION

For all the foregoing reasons, the SEC respectfully submits that (1) defendant James Tambone's motion to compel should be denied and (2) the scheduling order in this case should be amended consistent with the dates proposed above.

Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**

By its attorneys,

/s/ Michael D. Foster
Michael D. Foster (IL Bar #6257063)
  Senior Trial Counsel
David London (BBO #638289)
  Senior Counsel
33 Arch Street, 23rd Floor
Boston, MA  02110
(617) 573-8824 (Foster)
(617) 573-4590 (fax)

Dated: March 11, 2011

## CERTIFICATE OF SERVICE

I, Michael D. Foster, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants (representing all parties in this action) as identified on the Notice of Electronic Filing.

Dated: March 11, 2011

/s/ Michael D. Foster
Michael D. Foster