**United States District Court**
**District of Massachusetts**

```
_____
                              )
SECURITIES AND EXCHANGE       )
COMMISSION,                   )
        Plaintiff,            )
                              )   Civil Action No.
        v.                    )   06-10885-NMG
                              )
JAMES TAMBONE and ROBERT HUSSEY, )
        Defendants.           )
_____  )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The Securities and Exchange Commission ("the S.E.C.") brings this enforcement action against defendants James Tambone ("Tambone") and Robert Hussey ("Hussey") for securities fraud.

**I.   <u>Proceedings in this Court</u>**

The complaint in this case is substantially similar to a previous complaint brought against the same defendants ("the original complaint"), which this Court dismissed without prejudice. In the original complaint, the S.E.C. asserted claims for 1) fraud in violation of the Securities Exchange Act of 1934 ("the Exchange Act") and Rule 10b-5 thereunder, 2) fraud in violation of Section 17(a) of the Securities Act of 1933, 3) aiding and abetting fraud in violation of Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("the Advisers Act") and 4) aiding and abetting in violation of Section 15(c) of the Exchange Act.

-1-

The S.E.C. alleged that Tambone and Hussey, as senior executives of Columbia Funds Distributor Inc. ("Columbia"), had engaged in securities fraud through a practice known as market timing. Market timing is a trading strategy in which investors exploit discrepancies between a stock's price within a mutual fund, calculated once per day, and the stock's actual trading price at that moment. The S.E.C. claimed that, through misleading prospectuses, the defendants misrepresented that market timing and other short-term, excessive trading practices were not permitted in the Columbia mutual fund complex ("the Columbia Funds"). From early 1998 through 2003, however, the defendants allegedly permitted certain preferred customers to engage in such practices notwithstanding what was said in the prospectuses.

This Court dismissed the original complaint. Applying the particularity requirements of Fed. R. Civ. P. 9(b), the Court concluded that the S.E.C. had failed 1) to attribute any false or misleading statements to the defendants because it made no allegation that the defendants had any role in preparing, drafting or signing the prospectuses, 2) to make out a claim for material omissions because the defendants had no duty to disclose market timing arrangements not attributable to them or 3) to allege a "scheme to defraud". With respect to the aiding and abetting claims, the Court held that the S.E.C. had "made no

allegation to suggest that the defendants consciously threw in their lot with the primary violators".

Shortly thereafter, the S.E.C. filed a new complaint commencing the instant action ("the new complaint").  It alleges nearly identical violations but adds 1) a claim for aiding and abetting violations of Section 10(b) of the Exchange Act and Rule 10b-5 and 2) twelve paragraphs attempting to overcome the earlier deficiencies (now alleging, for example, that defendants had some involvement with drafting a prospectus).  The defendants again moved to dismiss and the Court allowed the motion in December, 2006, this time with prejudice.  Although the new complaint attributes some specific conduct to the defendants, the Court held that the S.E.C. had still fallen short of its heightened burden because it did not, for instance, identify the substance of the defendants' comments and failed to allege that any of those comments were actually incorporated into the prospectuses.

## II.  **The First Circuit Panel Decision**

A panel of the First Circuit Court of Appeals (Judges Selya, Lipez and Delgado-Colon, sitting by designation) reversed.  With respect to the § 17(a) claim, the court questioned whether the proscribed conduct of making false or misleading statements to potential investors applied only to securities sellers directly communicating such statements to others or also to sellers who obtain money or property "by means of" any such statement, even

if the seller has not himself made the statement.  The court
adopted the latter, more expansive reading and, under that
interpretation, held that the new complaint was not deficient for
failing to attribute the false statements to the defendants.
Because the defendants made sales using prospectuses they knew
(or were reckless in not knowing) contained allegedly false
representations about market timing, they had obtained money or
property from those statements in violation of § 17(a).

With respect to Rule 10b-5, the panel adopted a similarly
expansive interpretation.  In particular, it held that, as senior
executives of a securities underwriter, defendants had a duty to
confirm the accuracy of the prospectuses and, accordingly, made
so-called implied statements to potential investors that they had
a reasonable basis to believe that the prospectuses were accurate
and complete.  Because statements in the prospectuses were
allegedly false, so too were defendants' implied statements,
which therefore fell within the purview of Rule 10b-5.

The Court also held that the S.E.C. complaint was pled with
sufficient particularity and that the aiding and abetting claims
survived the motion to dismiss.

Judge Selya filed a partial dissent with respect to the Rule
10b-5 holding.  The Rule provides, in pertinent part, that

> [i]t shall be unlawful for any person, directly or
> indirectly, . . . [t]o make any untrue statement of a
> material fact or to omit to state a material fact
> necessary in order to make the statements made, in the

-4-

light of the circumstances under which they were made,
not misleading.

Focusing on the text, he argued that "using" a material
misstatement does not equate to "making" such a statement.
Because the defendants did not themselves make any statement in
the prospectuses, the S.E.C. failed to allege a violation of Rule
10b-5.

## III.  **The First Circuit En Banc Decision**

After the First Circuit agreed to review only the Rule 10b-5
ruling <u>en banc</u>, Judge Selya's dissenting view prevailed.  In a
March 10, 2010 decision, Judge Selya wrote for the plurality and
affirmed this Court's previous dismissal of the SEC's claim.
With reasoning analogous to that of his prior dissent, the
plurality opinion rejected the SEC's argument that a securities
professional "makes" a statement either by 1) using statements to
sell securities regardless of whether the statements were crafted
by others or 2) directing the offer or sale of securities on
behalf of an underwriter, thus making an implied statement that
he has a reasonable basis to believe that the representations are
truthful and complete.

Judge Boudin filed a concurrence joined by Judge Lynch.
Judge Lipez, who had authored the panel decision, was joined in
dissent by Judge Toruella.  The dissenters were unpersuaded that
the panel decision's interpretation should be overruled and
argued again that the defendants' conduct fell within Rule 10b-

5's scope.

The panel judgment with respect to the § 17(a) and aiding and abetting claims was reinstated and the case was remanded for further proceedings on those secondary claims.

## IV.  <u>Subsequent Procedural History</u>

Discovery is scheduled to be completed by December 31, 2011 and a jury trial is scheduled for May 7, 2012.  On October 8, 2010, defendant Robert Hussey moved for summary judgment which the S.E.C. opposed.  On December 3, 2010, the Court entered a protective order relating to the discovery of confidential or privileged information.  On February 25, 2011, Tambone filed a motion to compel and to amend the scheduling order.

In a Memorandum & Order on May 31, 2011, the Court allowed the motion to amend the scheduling order and reserved judgment on the motion to compel.  On June 9, 2011, however, the parties submitted a stipulation reporting that they had independently resolved the motion to compel.  Remaining before the Court is defendant Robert Hussey's motion for summary judgment.

## V.  <u>Motion for Summary Judgment</u>

Hussey moves for summary judgment on the grounds that 1) a permanent injunction is unwarranted because there is no reasonable likelihood that he will commit any future securities law violations and 2) the S.E.C.'s claims for monetary relief are barred by the statute of limitations.

-6-

A.    **Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted." Id.  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).

-7-

Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

### B.   Monetary Relief

Civil enforcement actions brought by the S.E.C. are subject to a five-year statute of limitations period.  28 U.S.C. § 2462. That limitations period is equitably tolled, however, where the S.E.C. has shown that 1) there were insufficient facts available to put it on inquiry notice of the possibility of fraud and 2) once it was on inquiry notice, it exercised due diligence in attempting to uncover the factual basis underlying the alleged fraudulent conduct.  S.E.C. v. Tambone, 550 F.3d 106, 148 (1st Cir. 2008). (citing Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123, 127-28 (1st Cir. 1987)).

The S.E.C. has the burden of pleading and proving facts demonstrating the timeliness of its action in a securities fraud case.  Young v. Lepone, 305 F.3d 1, 8 (1st Cir. 2002).  The defendant, however, bears the burden of establishing that there were "storm warnings" that triggered the plaintiff's duty to investigate the fraud.  Id. at 9.

Hussey argues that all of the S.E.C.'s remaining claims accrued outside of the five-year limitations period, which began to run on May 19, 2001 and that equitable tolling does not apply.

He argues that the claims accrued before May 19, 2001 because, by that date, all of the market timing arrangements had been established and all of the mutual funds at issue had incorporated restrictive market timing language into their prospectuses.

The S.E.C. maintains that claims with respect to misrepresentations that occurred after May 19, 2001 are not barred by the statute of limitations.  Indeed, in a portion of its first opinion that was not vacated, the First Circuit stated that "the basis of the S.E.C.'s claims is not the market timing activities per se, but rather the fraud committed upon investors by misleading them about the presence of such activities in the Columbia funds."  Tambone, 550 F.3d at 148-49.  Thus, it appears that at least some of the alleged misrepresentations occurred within the limitations period and are not time-barred.

With respect to misrepresentations occurring before that date, the Court finds that the statute of limitations was tolled until September, 2003 because defendants' alleged misconduct remained concealed until then.  Hussey argues that the S.E.C. was not diligent because it knew that companies were adopting prospectus language that addressed restrictions on market timing and that investors engaged in mutual fund market timing with impunity.

Despite any general awareness by the S.E.C. of such industry practices, Hussey has not shown that the S.E.C. had any

-9-

information before September, 2003 that would have alerted it to any potential fraud on the part of defendants or the Columbia entities.  Id. at 149.  The First Circuit has already opined that equitable tolling is warranted in this case "because of the self-concealing nature of defendants' conduct, as well as their failure to report any of the alleged preferred investor arrangements to the independent trustees of the Columbia Funds". Id. at 148 n.50 ("The acts were self-concealing because a reasonable investor would not have been aware that market timing activities were allegedly occurring in several of the Columbia funds, in light of the text of the fund prospectuses that represented otherwise.").

Thus, the Court finds that the S.E.C.'s general awareness of market timing activity in the mutual fund industry did not provoke a duty to inquire whether the defendants in this case were misleading investors in the Columbia Funds about undisclosed timing arrangements with preferred customers.  Moreover, even if there were evidence of such warnings, there would still be a genuine issue of material fact as to whether the S.E.C. exercised reasonable diligence in light of those warnings and summary judgment still would not be appropriate.  See Cook v. Avien, Inc., 573 F.2d 685, 695 (1st Cir. 1978) ("a federal cause of action will accrue at the time when plaintiff in the exercise of reasonable diligence discovered or should have discovered the

-10-

fraud of which he complains."). The Court concludes, therefore, that genuine issues of material fact remain with respect to the tolling of the statute of limitations and will deny Hussey's motion for summary judgment.

Finally, with respect to disgorgement, the First Circuit has already held that it is an equitable remedy not subject to the five-year statute of limitations. <u>Tambone</u>, 550 F.3d at 148. The Court is bound by that decision and, as such, reiterates that the disgorgement claim is not time-barred. <u>United States</u> v. <u>Rivera-Martinez</u>, 931 F.2d 148, 150 (1st Cir. 1991) (holding that "the decision of the appellate court establishes the law of the case and it must be followed by the trial court on remand").

### C.    Injunctive Relief

The S.E.C. seeks an injunction permanently enjoining the defendants from violating in the future, directly or indirectly, the laws that they have been charged with violating. In order to obtain such injunctive relief, the movant must have "positive proof of a reasonable likelihood that past wrongdoing will recur." <u>S.E.C.</u> v. <u>Bausch & Lomb Inc.</u>, 565 F.2d 8, 18 (2d Cir. 1977). In determining whether that test is met, federal courts consider the totality of circumstances, including:

1)    the degree of scienter involved in the violation;

2)    the isolated or recurrent nature of the infraction;

3)    the defendant's recognition of the wrongful nature of

his conduct;

4)    the likelihood, because of defendant's professional
      occupation, that future violations might occur;

5)    the sincerity of the defendant's assurances against
      future violations;

6)    the egregiousness of the violation; and

7)    the existence of past violations.

S.E.C. v. M & A W., Inc., 538 F.3d 1043, 1055 (9th Cir. 2008);

S.E.C. v. Sargent, 329 F.3d 34, 39 (1st Cir. 2003); S.E.C. v.

Gruenberg, 989 F.2d 977, 978 (8th Cir. 1993).

Hussey contends that an injunction is unwarranted because
1) six years have passed since the complaint was filed without
any further infractions, 2) the S.E.C.'s failure to seek an
interlocutory injunction indicates that it is not concerned about
repeat offenses, 3) Hussey has completed a two-year enhanced
supervisory period at his new employment, 4) he assures the Court
that he will avoid future violations, 5) the claims in this case
are now limited to secondary claims based on others' alleged
misconduct and a § 17(a) claim with a scienter element that is
satisfied by negligence and 6) an injunction would have a
deleterious effect on Hussey's family.

The S.E.C. responds that a finding of liability is a
prerequisite to injunctive relief and the factual basis for
liability informs the Court's analysis of whether an injunction
should issue.  S.E.C. v. Treadway, 430 F. Supp. 2d 293, 346

-12-

(S.D.N.Y. 2006) (declining to rule on whether remedies were warranted because of the existence of genuine issues of material fact); S.E.C. v. Fenster, 929 F. Supp. 1346, 1349 (D. Colo. 1996) (denying motion to dismiss so that the S.E.C. could conduct discovery and present evidence of alleged past violations).

Hussey has cited one case in which injunctive relief was denied at the summary judgment stage without regard to the eventual outcome of the S.E.C.'s claim. S.E.C. v. Shanahan, Civ. A. No. 07-2879, 2010 WL 173819, at *9, 15-16 (D. Minn. Jan. 13, 2010) (holding that, "even if the S.E.C. succeeded in showing Defendants violated the Exchange Act or S.E.C. Rules, the S.E.C. is not entitled to a permanent injunction or an officer/director bar."). In that case, however, unlike this one, the parties had completed discovery. See id. at *16-17. In fact, in all but one of the cases cited by Hussey, the courts waited to adjudicate remedies until discovery had been completed. See, e.g., Sargent, 329 F.3d at 38 (after discovery); S.E.C. v. Steadman, 967 F.2d 636, 640 (D.C. Cir. 1992) (after trial); Bausch & Lomb, 565 F.2d at 14 (after trial); S.E.C. v. Ingoldsby, Civ. A. No. 88-1001, 1990 WL 120731, at *1 (D. Mass. May 15, 1990) (after trial); but see S.E.C. v. Gabelli, No. 08 CV. 3868, 2010 WL 1253603, at *10 (S.D.N.Y. Mar. 17, 2010) (denying request for injunction at the motion to dismiss stage).

The Court finds, therefore, that precluding the S.E.C. from

-13-

seeking a preliminary injunction at this stage is premature. Discovery is in progress and will not be completed until December 31, 2011. Information relating to the seven factors that the Court will consider in determining whether to enter a permanent injunction is likely to be elicited at trial. Therefore, the Court will defer any decision in that regard.

### ORDER

In accordance with the foregoing, Robert Hussey's motion for summary judgment (Docket No. 47) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated July 15, 2011